In re **BAKER & GETTY FINANCIAL SERVICES, INC.,** Baker & Getty Diversified, Inc., Baker & Getty Securities, Inc., Philip Cordek and Suzan Bierman Cordek, Debtors.

**Carl D. RAFOTH, Trustee, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Defendant.**

**Bankruptcy No. B87–00074–Y. Adv. No. 87–0118.**

United States Bankruptcy Court, N.D. Ohio.

June 30, 1988.

Russell A. Kelm, Daniel R. Swetman, Schwartz, Kelm, Warren & Rubenstein, Columbus, Ohio, for plaintiff/trustee Carl D. Rafoth.

Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This matter comes before the Court on the Motion filed by National Union Fire Insurance Company ("NUFIC") seeking a determination that the instant adversary action is a non-core proceeding. The Motion also asks the Court to refer the case to the District Court so that a jury trial may be conducted.[1]

Baker & Getty Securities, Inc. ("BGS") applied for an NASD Group Fidelity Bond on August 31, 1986. NUFIC subsequently issued a securities dealer blanket bond for the one-month period between October 1 and November 1, 1986. On January 22, 1987, involuntary petitions were filed against BGS, Baker & Getty Diversified, Inc. ("BGD"), and Baker & Getty Financial Services, Inc. ("BGFS"). An Order of Relief was entered on February 17, 1987. On May 14, 1987, NUFIC issued another securities dealer blanket bond to BGFS for the period from November 1, 1986, through November 1, 1987. On June 24, 1987, BGS notified NUFIC that a claim would be made on the bond. On September 29, 1987, it submitted a proof of loss to NUFIC claiming a loss of Two Million, Four Hundred Seventeen Thousand, Sixty–Six & 76/100 Dollars ($2,417,066.76). On December 8, 1987, the Trustee filed this Complaint seeking a declaratory judgment finding the Plaintiff's loss to be covered by the bond,

and an Order compelling the Defendant to pay the Plaintiff the aggregate liability amount of One Million & 00/100 Dollars ($1,000,000.00), plus interest, court costs, and attorney fees. NUFIC filed an Answer on February 12, 1988, in which the Defendant denied both coverage and this Court's jurisdiction. On February 16, 1988, the present Motion was filed with the Plaintiff's response filed on February 24, 1988.

In 1982, the Supreme Court invalidated portions of the jurisdictional structure of bankruptcy courts as provided under the Bankruptcy Reform Act of 1978 (Pub.L. No. 95–598; 92 Stat. 2549; 11 U.S.C. § 101, et seq.) in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In response, Congress fashioned a new jurisdictional framework. Under 28 U.S.C. Sec. 1334, district courts are given exclusive jurisdiction over "all cases under Title 11" and nonexclusive jurisdiction "of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." District courts may refer to the Bankruptcy Court all cases and proceedings within district courts' Sec. 1334 jurisdiction. 28 U.S.C. Sec. 157(b) and (c) then prescribe the manner in which bankruptcy judges shall deal with these referred cases. Subsection 157(b)(1) provides that for "core" cases, bankruptcy judges may "hear and determine" the matter and enter final judgment subject only to appeal under Sec. 158. However, for matters that are not core proceedings but are "otherwise related" to cases under Title 11, Sec. 157(c)(1) provides that the bankruptcy judge acts, in effect, as a master by submitting proposed findings of fact and conclusions of law to the district court which reviews the matters *de novo*. NUFIC urges this Court to find this adversary action to be a non-core proceeding. For the following reasons, we decline to so find.

We begin with the premise that "core proceedings" are to be given the broadest, constitutionally permissable defi-

---

1. At least one court has held that once a case has been referred to the bankruptcy court, only the District Court may transfer a case back to its

jurisdiction. *See In re Wonder Corp. of America*, 81 B.R. 221 (Bankr.D.Conn.1988).

nition. *In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir.1987).[2] Thus, proceedings ought to be classified as core unless a proceeding clearly fits within the characteristics of a non-core action. In *Commercial Heat Treating v. Atlas Indus., Inc. (In re Commercial Heat Treating)*, 80 B.R. 880 (Bankr.S.D.Ohio 1987), the court articulated four conjunctive characteristics which would combine to define a non-core proceeding. Drawing on the Supreme Court's decision in *Northern Pipeline*, the court stated that a non-core proceeding was:

[A] proceeding filed in the bankruptcy court alleging a cause of action that:

(1) is not specifically identified as a core proceeding under Sec. 157(b)(2)(B)–(N), [and]

(2) existed prior to the filing of the bankruptcy case, [and]

(3) would continue to exist independent of the provisions of Title 11, [and]

(4) in which the parties' rights, obligations, or both, are not significantly affected as a result of the filing of the bankruptcy case.

(emphasis in the original). *Commercial Heat Treating v. Atlas Indus., Inc.*, 80 B.R. at 888.

■ As applied to the present case, there is no specific identification of the instant cause of action in the non-exclusive listing of core actions in Sec. 157(b)(2).[3] Furthermore, the cause of action would continue to exist independent of the Bankruptcy Code and the bankruptcy filing does not significantly affect the parties' rights. However, the cause of action did not exist prior to the filing of the bankruptcy case. Courts have held that litigation over post-Petition claims ought to be classified as core proceedings. *In re Arnold Print Works*, 815 F.2d at 168; *In re Mike Burns Inn, Inc.*, 70 B.R. 863, 867 (Bankr.D.Mass.1987). The Involuntary Petition in this cause was filed on January 22, 1987, and an Order of Relief was entered on February 17, 1987. It was not until May 14, 1987, that NUFIC issued the bond. NUFIC argues that the distinction drawn by the cases is whether the contract was made pre-Petition or post-Petition, regardless of when the breach occurred. Regardless of the merits of that argument, the distinction makes no difference because both the breach and acceptance of the contract occurred post-Petition. NUFIC's implication that the contract was entered into pre-Petition is not supported. Even if the application for a bond had been completed prior to the filing of the Petitions, traditional contract principles suggest that NUFIC had not accepted the offer, and thus, completed the contract, until the bond was issued in May. 57 O.Jur.3d, *Insurance*, Sec. 237 (1985). Hence, the cause of action asserted in this proceeding did not exist prior to the filing of the Petition. This action fails to meet one of the required characteristics of a non-core proceeding, and the action shall be deemed to be a core proceeding.

The *Arnold* case considered the constitutionality of classifying the collection of a post-Petition account receivable as a core proceeding. The court wrote:

The Constitution permits a non-Article III bankruptcy court to adjudicate post-Petition claims related to administration or liquidation of a debtor's estate because the claims are both historically and functionally distinguishable from those at issue in *Marathon.*

The Supreme Court has repeatedly turned to history and tradition to help define the type of adjudicatory proceeding that the Constitution reserves exclusively for Article III courts....

If one examines the jurisdictional history of post-Petition claims of the sort in issue here, one finds that they are not 'traditional contract actions'; nor are they matters that 'historically' have been decided only in the equivalent of Article III courts. To the contrary, bankruptcy courts have adjudicated claims like this

---

2. The First Circuit made this finding based on both congressional statements reflecting legislative intent and the non-exclusive listings in Sec. 157(b)(2).

3. Because of our holding, it is unnecessary for the Court to consider whether the present action may be termed a core proceeding by virtue of Sec. 157(b)(2)(A), (E) or (O).

one at least since the enactment of the Bankruptcy Act of 1898.... Given potential court supervision of estate administration, the legal fiction that the debtor-in-possession is a court official and that the contract is with the court itself is a fiction that borders on the truth. It helps to distinguish the claim at issue here, even on the view of *Marathon's* plurality: [the debtor] makes the kind of claim that, historically speaking, might be characterized as raising matters of 'public rights,' defined as those arising between the government and others. [citation omitted] *Marathon* found no constitutional objection to a bankruptcy court deciding this sort of claim. Quite apart from the force of the fiction, the history of bankruptcy court jurisdiction means that a post-Petition contract made with the debtor-in-possession cannot be called a 'traditional' state contract action.

*In re Arnold Printworks, Inc.*, 815 F.2d at 169–70. We believe that the post-Petition insurance contract at issue here is analagous to the post-Petition contract considered in *Arnold*. As a result, we fully subscribe to the reasoning expressed by the *Arnold* court on this issue.

█ This Court is the appropriate forum to decide whether there is a right to a trial by jury.[4] *In re Energy Resources Co.*, 49 B.R. 278, 281 (Bankr.D.Mass.1985). Under the present statutory framework, this Court believes the proper test to apply in analyzing a litigant's right to a jury trial is based on whether the cause of action sounds in law or in equity.[5] *Id.* This is the same approach which has been adopted by the Ninth Circuit. *American Universal Ins. Co. v. Pugh*, 821 F.2d 1352, 1355 (9th Cir.1987). The two relevant factors which are examined in determining the nature of the issue are (1) the remedy sought; and (2) the practical abilities and limitations of juries.

█ The Trustee seeks a declaratory judgment that the loss occasioned by the Debtors is covered by the bond issued by NUFIC and, thus, that the Company is liable to cover the loss, not exceeding One Million & 00/100 Dollars ($1,000,000.00). It is true that a cause of action seeking a judgment for money damages is normally viewed as one at law. *In re Portage Assoc., Inc.*, 16 B.R. 445, 448 (Bankr. N.D. Ohio 1982). However, the case may be different where a money judgment is incidental to and dependent on a declaratory judgment action. As one court wrote:

> Where monetary relief must necessarily be a part of the equitable remedy, the case remains equitable in nature. [citations omitted]. Even though [the plaintiff's] ... complaint seeks monetary relief, the action is, nonetheless, equitable in nature because, 'where a plaintiff seeks to recover monies alleged to be wrongfully withheld, the basis for such an action is wholly equitable.' [citation omitted]. For example, 'where a cause of action seeking monetary relief is integral to the equitable relief sought ..., the action lies in equity with no right of jury trial.'

*American Universal Ins. Co. v. Pugh*, 821 F.2d at 1356. The Trustee in this proceeding is not asking for One Million & 00/100 Dollars ($1,000,000.00) in damages. Rather, he is asking for a declaration that NUFIC is liable on a contractual obligation which declaration, in turn, may be used to recover the money obligation. Thus, the Court concludes that the remedy sought is equitable in nature.

The Court is unable to discern why a jury trial is needed in this action. NUFIC claims that a jury trial is needed because "[m]ajor issues of credibility are likely to be determinative of the ultimate issues in

---

**4.** At least one court has concluded that no right to a jury trial exists in core proceedings since such proceedings "are inherently proceedings in equity." *Bokum Resources Corp. v. Long Island Lighting Co.*, 49 B.R. 854, 868 (Bankr.D.N.M. 1985). Because this Court has reservations regarding such a broad statement, we decline to adopt the Court's broad holding.

**5.** This dichotomy is intended to reveal whether a right to trial by jury in this action is guaranteed by the Seventh Amendment to the U.S. Constitution. Historically, if the issue would have been tried in courts of equity, there is no right to a jury. There is only a right to a jury when the issue would have been tried in a court of law. *Hauytin v. Grynberg*, 52 B.R. 657, 660 (Bankr.D.Cal.1985).

this case." However, NUFIC fails to specify which of its defenses is dependent upon issues of credibility or why this Court would be unable to effectively evaluate the credibility of the parties involved. Furthermore, an examination of the Defendant's Answer containing NUFIC's defenses persuades the Court that issues of credibility will play a subordinate role in the disposition of this controversy. The primary, and perhaps only, question to be considered concerns the proper construction of the contract. As a question of law, the jury would be unable to resolve this question. The construction of a contract is solely a question of law, decisions about which are committed to a court, not a jury. *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 946 (5th Cir.), *cert. denied* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981). The Defendant is not entitled to a jury trial because the Trustee's action sounds in equity and the overriding bulk of the issues presented appear to involve questions of law, not of fact.

Accordingly, NUFIC's Motions will be overruled. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

An appropriate Order will be entered.