**In re BAKER & GETTY FINANCIAL SERVICES, INC., Baker & Getty Diversified, Inc., Baker & Getty Securities, Inc., Philip Cordek, Susan Bierman Cordek, Debtors.**

**Carl D. RAFOTH, Trustee, Plaintiff,**

v.

**The FIRST NATIONAL BANK OF BARNESVILLE, et al., Defendants.**

Bankruptcy No. B87–00074–Y. Adv. No. 87–0079.

United States Bankruptcy Court, N.D. Ohio.

March 15, 1989.

See also, Bkrtcy., 93 B.R. 559.

302

D. Keith Roland, Youngstown, Ohio, for plaintiff/trustee.

Robert M. Morrow, Means, Bichimer, Burkholder & Baker Co., L.P.A., Columbus, Ohio, for defendant First National Bank of Barnesville.

Thomas Paris, Cleveland, Ohio, for defendant Philip Cordek.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

Plaintiff Trustee has moved for summary judgment pursuant to Bankruptcy Rule 7056, incorporating Rule 56, Federal Rules of Civil Procedure. The Trustee seeks to recover from Defendant FIRST NATIONAL BANK OF BARNESVILLE ("FIRST NATIONAL") Two Hundred Forty–Five Thousand, Eight Hundred & 00/100 Dollars ($245,800.00) in payments made by Debtors on a promissory note, the value of two automobiles, and interest on these amounts. This is a core proceeding pursuant to 28 U.S.C. Sec. 157(b)(2)(F).

The Trustee's Motion is based (1) on a theory of preferential transfers, as set forth in 11 U.S.C. Sec. 547; and, (2) on a theory of fraudulent transfers under 11 U.S.C. Sec. 548. Both the Plaintiff and Defendants have submitted affidavits, depositions and exhibits to support their respective positions.

## BACKGROUND

An involuntary petition was filed on January 22, 1987, naming as Debtors BAKER & GETTY FINANCIAL SERVICES, INC., BAKER & GETTY DIVERSIFIED, INC., and BAKER & GETTY SECURITIES, INC., PHILIP CORDEK and STEVEN MEDVED were principals of the Debtor Corporations.[1]

BAKER & GETTY FINANCIAL SERVICES, INC., incorporated in August, 1985, was intended to operate as a full-service financial brokerage firm. In December 1985, BAKER & GETTY DIVERSIFIED, INC., was formed to obtain and loan funds and develop real estate opportunities for BAKER & GETTY FINANCIAL SERVICES. In May 1986, BAKER & GETTY SECURITIES, INC., was formed to replace the two prior Corporations to overcome difficulties encountered by Debtors in obtaining licenses for securities trading. JOHN CHARLES, INC., was incorporated on June 10, 1986, to serve as a real estate investment company for the BAKER & GETTY entities and its principals.

The BAKER & GETTY entities were engaged in a "Ponzi" scheme.[2] No securities were traded. Rather, some investors received returns on investments which were financed by the money received from newly attracted investors. By November 1, 1986, various investors were defrauded of an estimated $2.5 million dollars.

## FACTS

At all times pertinent herein, Defendant FIRST NATIONAL maintained a customer account for and in the name of BAKER & GETTY and a personal account for PHILIP CORDEK.

On August 27, 1986, PHILIP CORDEK, BYRON RICE, and ROSE RICE[3], as individuals, executed a promissory note to FIRST NATIONAL for $1.1 million dollars. (Deposition of Charles J. Bradfield, pp. 8–10, hereafter "CJB p. 8–10"; Plaintiff Exhibit 1 to Summary Judgment Motion). Both Mr. Rice and Mr. Cordek pledged various items of collateral to secure the obligation. The collateral pledged by Mr. Cordek consisted of several automobiles, a mortgage on Mr. Cordek's home in Shaker Heights, Ohio, and a lien on a boat. (CJB p. 19). The note was due in full on September 11, 1986, but was not paid when due.

On October 24, 1986, Thirty Thousand & 00/100 Dollars ($30,000.00) was wired to Defendant FIRST NATIONAL from an account belonging to Mark L. Hocevar at Ohio Savings Association in Cleveland.[4] The funds were designated for the benefit of BAKER & GETTY but were immediately applied, on Mr. Bradfield's order, to the promissory note of Mr. Cordek and the Rices. (CJB p. 43).

On November 8, 1986, Defendant FIRST NATIONAL withdrew Fifteen Thousand, Eight Hundred & 00/100 Dollars ($15,800.00) from BAKER & GETTY's account at FIRST NATIONAL and applied the funds to the Cordek/Rice promissory note obligation. (CJB pp. 44–46; Plaintiff Exhibit 4 to Summary Judgment Motion).

On November 7, 1986, a Two Hundred Thousand Dollar ($200,000.00) cashier's check, payable to "Malcolm Jacobs Aviation" and endorsed by Malcolm Jacobs in blank, was handed over to Mr. Rice. Mr. Rice delivered the check to Mr. Bradfield, President of Defendant FIRST NATIONAL, the same day, with instructions to apply the proceeds of the check against the

1. The underlying case is currently pending in the U.S. Bankruptcy Court for the Northern District of Ohio sitting in Youngstown, Ohio, as Consolidated Bankruptcy Case No. B87–00074-Y.

2. *Rafoth v. Bailey* (*In re Baker & Getty Fin. Serv., Inc.*), 88 B.R. 792 (Bankr.N.D.Ohio 1988). A "Ponzi" scheme generally refers to an investment scheme whereby investors are promised excessive returns on investments. Typically, initial investors are actually paid the promised returns to attract additional investors. For an

interesting history of the derivation of the term "Ponzi" scheme, *see Merrill v. Abbott* (*In re Independent Clearing House Co.*), 41 B.R. 985, 994, n. 12 (Bankr.D.Utah 1984).

3. Byron Rice and Rose Rice are husband and wife. The Rices were neither principals nor officers of the BAKER & GETTY entities.

4. The record is devoid of information regarding the identify of Mr. Hocevar.

amount owed on the Cordek/Rice promissory note. Contrary to Mr. Rice's request, Mr. Bradfield insisted that Mr. Rice endorse the check. Mr. Bradfield then deposited the funds in the account of Mr. Rice until the check cleared the banking system. Thereafter, on November 15, 1986, Defendant debited Mr. Rice's account and applied the funds to the promissory note. (CJB pp. 44, 53–57; Rice Deposition, pp. 36, 38, 179–180; Plaintiff's Exhibits 5 and 11 to Summary Judgment Motion).

As noted above, an involuntary petition naming the BAKER & GETTY entities as debtors was filed on January 22, 1987. PHILIP CORDEK was joined as an affiliate on April 28, 1987. The Court entered an Order consolidating the estate of Mr. Cordek with the BAKER & GETTY entities on September 8, 1987. This adversary proceeding was filed on September 1, 1988.

DISCUSSION

Fed.R.Civ.P. 56 is made applicable to adversary proceedings by Bankruptcy Rule 7056. According to Rule 56, summary judgment is appropriate only where there is no genuine issue of material fact when viewing the evidence in a light most favorable to the opposing party and movant is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153–57, 90 S.Ct. 1598, 1606–08, 26 L.Ed.2d 142 (1970); *Watkins v. Northwestern Ohio Tractor Puller's Assn., Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980). It is the movant's burden to establish that no genuine issue of fact exists. *Shearson/American Express, Inc., v. Mann*, 814 F.2d 301, 305 (6th Cir. 1987). However, if a motion has been made and properly supported, the opposing party may not rest on the pleadings. Instead, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir. 1983).

Defendant FIRST NATIONAL has objected to acceptance of the testimony found in the depositions of PHILIP CORDEK and STEVEN MEDVED. The basis for the objection is that the depositions were taken prior to the date when Defendant FIRST NATIONAL first entered its appearance on June 5, 1987, with the filing of an Objection to a Motion for Substantive Consolidation. Defendant asserts that since it was neither present nor notified nor given the opportunity to be present at the deposition, the Court must disregard the testimony in those depositions pursuant to Bankruptcy Rule 7032.

Defendant FIRST NATIONAL has further objected to the Court's consideration of Plaintiff Exhibits 2, 6, 7 and 9, asserting that Plaintiff did not properly authenticate and identify the exhibits.

As a predicate to determining whether genuine issues of material fact exist, we must first determine whether the Court may properly consider the CORDEK and MEDVED depositions in a motion for summary judgment.

I. ADMISSIBILITY OF DEPOSITIONS

Defendant FIRST NATIONAL correctly asserts that Fed.R.Civ.P. 32(a) and Bankruptcy Rule 7032 bar the use of depositions against a party deprived of notice and an opportunity to be present at the examination. Defendant fails to distinguish the appropriate use of such deposition testimony when the deposition serves the function of an affidavit. As the court noted in *In re Robert Landau Associates, Inc.*, 56 B.R. 648, 651 (Bankr.S.D.N.Y. 1986), courts have approved the admissibility and use of depositions in motion practice. *See Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966–67 (9th Cir.1981) (court admitted depositions as affidavits because they were made on personal knowledge and set forth admissible facts); *United States v. Fox*, 211 F.Supp. 25 (E.D.La. 1962), aff'd. 334 F.2d 449 (5th Cir.1964); *In re Melton*, 39 B.R. 762 (Bankr.N.D.Ga. 1984); *Tormo v. Yormark*, 398 F.Supp. 1159, 1168 (D.N.J.1975). Here, the depositions are based on the personal knowledge of Mr. Medved and Mr. Cordek and were taken under oath and were signed by them.[5] As such, the depositions meet the

---

5. Defendant has not supplied affidavits which would suggest the testimony is false, not based

requirements for affidavits under Fed.R. Civ.P. 56. Accordingly, the depositions will be considered as affidavits in support of the Plaintiff's Motion for Summary Judgment.

## II. ADMISSIBILITY OF EXHIBITS

■ Defendant FIRST NATIONAL has objected to Exhibits 2, 6, 7 and 9.[6] Defendant has offered no evidence challenging the substance of the Exhibits, but merely asserts that the Exhibits have neither been properly identified nor authenticated according to the Federal Rules of Evidence. However, Defendant ignores the affidavit of the Trustee, CARL D. RAFOTH, submitted in support of Plaintiff's Motion, which avers that all exhibits attached to the Motion are true and accurate copies of documents obtained from Debtor's business records and in the Trustee's personal possession. Furthermore, the documents comprising the exhibits have been made available to all defendants through the bankruptcy proceedings. Exhibit 2, in particular, was introduced in the hearing on the Objection to FIRST NATIONAL's Proof of Claim. Moreover, the Trustee properly points out the self-authenticating nature of commercial paper and related documents pursuant to Fed.R.Evid. 902. Accordingly, the Exhibits are accepted as submitted in support of the Trustee's Motion for Summary Judgment.

## III. PREFERENCES UNDER SECTION 547(b)

Plaintiff Trustee seeks to recover as preferences transfers to Defendants within ninety (90) days of January 22, 1987, the date the involuntary petition was filed. The burden is on the Trustee to prove every element of a preference voidable under 11 U.S.C. Sec. 547(b). *Moran Bros.,*

*Inc., v. Yinger,* 323 F.2d 699, 701 (10th Cir.1963); *Merrill v. Abbott, (In re Independent Clearing House Co.),* 41 B.R. 985, 1009 (Bankr.D.Utah 1984); *In re Belize Airways, Ltd.,* 18 B.R. 485, 487 (Bankr.S.D. Fla.1982); *In re Gruber Bottling Works, Inc.,* 16 B.R. 348, 351, n. 5 (Bankr.E.D.Pa. 1982). The Trustee is not entitled to recover if any necessary element is wanting. *Matter of Yale Express System, Inc.,* 11 B.R. 495, 499 (Bankr.S.D.N.Y.1981).

■ Section 547(b) sets out the elements of a voidable preference as (1) any transfer of the debtor's property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made while the debtor was insolvent; (5) made on or within ninety (90) days before the date of the filing of the petition (or one (1) year before the filing date if the creditor was an "insider"); (6) that enables such creditor to receive more than the creditor would receive if the case was a Chapter 7 liquidation. Following is an examination of each element contained in Sec. 547(b) to determine whether the Trustee has met his burden of proving he is entitled to judgment as a matter of law.

(1) *A Transfer of Property of the Debtor.* A transfer is avoidable as a preference only if the transferred property or interest in property diminished or depleted the debtor's estate. *Coral Petroleum, Inc., v. Banque Paribas–London,* 797 F.2d 1351 (5th Cir.1986). *Matter of Van Huffel Tube Corp.,* 74 B.R. 579, 585 (Bankr.N.D.Ohio 1987). Congress intended a broad interpretation of the term "transfer". H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), 1978 U.S.Code Cong. & Admin. News, p. 6271; S.Rep. No. 95–989, 95th Cong., 2d Sess. 27 (1978), 1978 U.S.Code Cong. & Admin.News, pp. 5787, 5813.

on personal knowledge, or that there is otherwise some actual dispute as to the facts stated.

**6.** Exhibit 2 consists of copies of checks pertaining to JOHN CHARLES, INC. Exhibit 6 is a bank record of a Ten Thousand & 00/100 Dollar ($10,000.00) wire transfer from Mr. Cordek's account at Ameritrust in Cleveland to Citizens Bank. Exhibit 7 consists of copies of bank records relating to wire transfers from Mr. Cor-

dek's account at Ameritrust to Malcolm Jacobs Aviation, Inc., at Citizens National Bank of Greater St. Louis. Exhibit 9 is a copy of a statement with the letterhead "Malcolm Jacobs Aviation, Inc.", which acknowledges the wire transfers totalling Sixty Thousand & 00/100 Dollars ($60,000.00) which were the subject of Exhibits 6 and 7.

Thus, 11 U.S.C. Sec. 101(50) defines "transfer" as including "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property...."

"Property of the estate" is defined in 11 U.S.C. Sec. 541. There is also formidable judicial precedent by courts reviewing transfers in a Ponzi scheme. The reviewing courts have concluded that

> when a debtor obtains money by fraud and mingles it with other money so as to preclude any tracing and when the defrauded party ... accepts benefits under his contract with the debtor, the money is 'property' of the debtor within the meaning of Sections 547 and 548 of the Code.

*Merrill v. Abbott, (In re Independent Clearing House Co.)*, 77 B.R. 843, 853–54 (D. Utah 1987), *citing Merrill v. Dietz (In re Universal Clearing House Co.)*, 62 B.R. 118, 122–24 (D.Utah 1986) and *DuVoisin v. Anderson (In re Southern Indus. Banking Corp.)*, 66 B.R. 349, 363–64 (Bankr.E.D. Tenn.1986).

Here, the deposition testimony of Mr. Bradfield, FIRST NATIONAL's President, established that the Thirty–Thousand & 00/100 Dollar ($30,000.00) payment applied to the CORDEK/RICE promissory note on October 24, 1986, was derived from funds wired to FIRST NATIONAL and designated for the account of BAKER & GETTY. (CJB p. 43). Similarly, the Fifteen Thousand, Eight Hundred & 00/100 Dollar ($15,800.00) payment on the CORDEK/RICE promissory note was, according to Mr. Bradfield, withdrawn from the account of BAKER & GETTY. It is clear that the first Forty–Five Thousand, Eight Hundred & 00/100 Dollars ($45,800.00) in payments on the promissory note were derived from the Debtor's estate. The manner in which the transfers were made falls within the definition of "transfer" contained in 11 U.S.C. Sec. 101(50).

The source of the Two Hundred Thousand & 00/100 Dollars ($200,000.00) payment applied to the note on November 15, 1986, was the sale of an airplane titled in the name of a BAKER & GETTY entity, JOHN CHARLES, INC. The Trustee has produced uncontradicted evidence that the monies used to purchase the plane came from the accounts of the Debtors. Plaintiff Exhibits 6 and 7 show wire transfers of Ten Thousand & 00/100 Dollars ($10,000.00) and Fifty Thousand & 00/100 Dollars ($50,000.00) from PHILIP CORDEK's account at Ameritrust to a St. Louis Bank. Plaintiff Exhibit 8 shows a Two Hundred Fifteen Thousand & 00/100 Dollar ($215,000.00) wire transfer from Mr. Cordek's account at Defendant FIRST NATIONAL to Malcolm Jacobs Aviation in St. Louis. Plaintiff Exhibit 9 is an acknowledgement of receipt of all three of these payments by Malcolm Jacobs. On the basis of the evidence, we conclude that Debtors were the source for the funds used to purchase the plane in September 1986 and that the November 15, 1986 payment on the promissory note also constitutes a transfer of the property of the Debtors.

(2) *To or for the Benefit of a Creditor.* The term "creditor" is defined in 11 U.S.C. Sec. 101(9) as "an entity that has a claim against the debtor's estate." "Claim" is defined in 11 U.S.C. Sec. 101(4) as a "right to payment." In preference law, creditors include only holders of pre-petition claims against the debtor. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977), 1978 U.S. Code Cong. & Admin.News, p. 6266; S.Rep. No. 95–989, 95th Cong., 2d Sess. 22 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5808. It is uncontroverted that FIRST NATIONAL meets the definition of "creditor," has a claim, and was benefited by the pre-petition payments. Thus, the Trustee has satisfied the second element.

(3) *For or on Account of an Antecedent Debt.* "Debt" is defined in 11 U.S.C. Sec. 101(11) as a "liability on a claim." The terms "claim" and "debt" are co-extensive. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 310 (1977), 1978 U.S.Code Cong. & Admin. News, p. 6267; S.Rep. No. 95–989, 95th Cong., 2d Sess. 23 (1978), 1978 U.S.Code Cong. & Admin.News, p. 5809. In this context, a "pre-petition claim" such as that at issue, gives rise to an "antecedent debt."

The Trustee has satisfied the third element to establish a voidable preference.

(4) *Made While the Debtor was Insolvent.* Under 11 U.S.C. Sec. 547(f), a debtor is presumed to be insolvent during the ninety-day (90–day) period preceding bankruptcy. This presumption means that the burden of going forward with evidence is shifted to defendant. Fed.R.Evid. 301. Defendant has offered no evidence to demonstrate that Debtors were solvent when the transfers were made. The fourth element is established.[7]

■ (5) *Made On or Within Ninety (90) Days Before the Day of the Petition Filing.* As the language of Sec. 547(b)(4)(A) directs, calculation of the ninety-day (90–day) period begins with the day "before" the filing of the petition. Bankruptcy Rule 9006(a); Fed.R.Civ.P. 6(a); *In re Enterprise Fabricators Inc.,* 36 B.R. 220, 223 (Bankr.M.D.Tenn.1983). The involuntary petition here was filed on January 22, 1987. If one uses January 21, 1987, as day one and counts backwards, the ninetieth day will fall on October 24, 1986. Thus, all of the subject payments fall within the ninety-day (90–day) pre-petition period.

■ Defendant argues that the appropriate date to begin counting the ninety (90) days should be September 8, 1987, the date of substantive consolidation, rather than the January 22, 1987 date of the involuntary petition. Defendant attempted to distinguish this Court's decision in *Matter of Evans Temple Church of God in Christ & Community Center, Inc.,* 55 B.R. 976 (Bankr.N.D.Ohio 1986). In that case, we held that a "relation back" to the date of the first petition was justified because the creditor treated both debtors as one entity. In this Court's view, the Defendant's distinctions here are unfounded. Here, as in *Evans,* the creditor treated both Debtors as

one entity. This is evidenced in FIRST NATIONAL's application to the promissory note of funds which it knew to be property of BAKER & GETTY, not Mr. Cordek. For instance, the November 8, 1986 transfer came directly from the account of BAKER & GETTY. There is simply no basis shown for Defendant concluding that these funds were the personal property of Mr. Cordek.

As this Court stated in *Evans,* if the purpose of the consolidation is to protect the unsecured creditors of both Debtors where the assets and liabilities of the Debtors are so intermingled as to make them substantially the same, we must assign a like filing date to both Debtors. *Matter of Evans,* 55 B.R. at 982. Accordingly, it is held that the Trustee has prevailed on this element.

(6) *That Enables Creditor to Receive More than if Case Was a Chapter 7.* Whether a creditor has received a preference is to be determined by the actual effect of the payment. To make this determination, the Court must make a hypothetical liquidation of the Debtor's estate. *Matter of Hale,* 15 B.R. 565, 567 (Bankr.S.D. Ohio 1981). This Court previously subordinated FIRST NATIONAL's claim.[8] The Trustee has averred that the unsubordinated creditors of the estate will not receive 100 percent (100%) of their claims, and the subordinated creditors will receive nothing. (Rafoth Affidavit, para. 5). The averments of the Trustee are uncontroverted. In view of the evidence before us, we find that the Trustee has met the requirements of this element.[9]

## IV. FRAUDULENT CONVEYANCES UNDER SECTION 548

■ The second theory upon which the Trustee seeks to recover from FIRST NA-

---

7. Furthermore, this Court has previously found that the Debtors here were engaged in a "Ponzi" scheme and were insolvent from the commencement of the Debtors' activities. *Rafoth v. Bailey (In re Baker & Getty Fin. Serv., Inc.),* 88 B.R. at 799.

8. *See In re Baker & Getty Finan. Serv.,* 88 B.R. 137, 140 (Bankr.N.D.Ohio 1988).

9. Our findings on the Trustee's preference claims here effectively dispose of this matter. However, we will proceed with Sec. 548(a) alternative findings in order to fully treat all claims here made should a reviewing court determine that our analysis under Sec. 547(b) is not completely dispositive of the matter.

TIONAL is that the payments on the COR-DEK/RICE promissory note constitute fraudulent conveyances under 11 U.S.C. Sec, 548.[10] In order to succeed under Section 548(a)(1), the Trustee must demonstrate: (1) that there was a transfer of an interest of the debtor in property; (2) that the transfer occurred within one (1) year prior to the date of the filing of the petition; and (3) that the transfer was made with the actual intent to hinder, defraud or delay. The matters involved in establishing the first and second elements were fully discussed above in dealing with preferential transfers. As set out above, the Trustee has carried his burden on these elements.

With respect to the third element, the Trustee must prove that the transfer was made with actual intent to hinder, delay, or defraud "any entity to which the debtor was or became [indebted], on or after the date that such transfer was made...." 11 U.S.C. Sec. 548(a)(1). The statutory language makes it plain that one can infer an intent to defraud from the mere fact that Debtors were operating a Ponzi scheme. The comments of the court in *Merrill v. Abbott*, 77 B.R. at 860, are equally applicable here:

> A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors.... He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law,

*cf. Restatement (Second) of Torts Sec. 8A* (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Cf. Coleman Am. Moving Servs., Inc., v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)*, 14 B.R. 637, 643 (Bankr.D.Kan.1981) (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for finding actual intent to hinder, delay or defraud within the meaning of Sec. 548(a)(1)). *See also Conroy v. Shott*, 363 F.2d 90, 91–92 (6th Cir.), *cert. denied*, 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433 (1966), holding that the "question of intent to defraud is not debatable" given the fact of a Ponzi scheme.

## V. APPLICABILITY OF EXCEPTIONS

### A. *Immunity Under Section 548(c)*

■ Section 548(c) of the Code provides protection from the Trustee's avoidance powers to the extent that a creditor gave "value" for transfers in "good faith."[11] Under Sec. 548(d), satisfaction of an antecedent debt is "value". The Court has already held in dealing with the Trustee's preference theory that the payments on the CORDEK/RICE promissory note were payments on account of an antecedent debt. There is no question that Defendant FIRST NATIONAL gave "value." The only issue is Defendant's "good faith."

"Good faith" is not defined in the Code. The determination is left to the discretion of the Court based on the facts of the matter. *Boatman v. McMillan Machinery*

---

**10.** Section 548 of the Bankruptcy Code provides, in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; ...

**11.** Section 548(c) provides:

Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

Co., Inc. (*In re Bristol Industries Corp.*), 45 B.R. 606, 609 (Bankr.D.Conn.1985). In *Bergquist v. First Nat'l. Bank (In re Am. Lumber Co.*), 5 B.R. 470, 477 (D.Minn. 1980), the court determined that the test is whether the transaction is one at arm's length. Here, after full hearing, we determined as a matter of fact that Defendant's President, Mr. Bradfield, had a personal interest in the CORDEK/RICE promissory note in the amount of One Hundred Thousand & 00/100 Dollars ($100,000.00).[12]

In *Seligson v. New York Produce Exchange*, 394 F.Supp. 125, 133 (S.D.N.Y. 1975), the court held that the transferee could not meet the good faith requirement if the transferee had knowledge of the unfavorable financial condition of the transferor at the time of the transfer. Here, the Court found that the fraud perpetrated by the Debtors was fully disclosed on November 5, 1986, during a Board of Directors meeting of BAKER & GETTY SECURITIES, INC.[13] Furthermore, after a full hearing on FIRST NATIONAL's opposition to the Motion to Consolidate, we found that the Bank failed to perform "adequate" title searches relating to the CORDEK collateral, or to conduct a "sufficient" credit investigation of Mr. Cordek. These findings coupled with the Bank's diversion of BAKER & GETTY funds, acceptance of the Two Hundred Thousand & 00/100 Dollar ($200,000.00) payment after the revelation of the Ponzi scheme on November 5, 1988, and Mr. Bradfield's personal interest in satisfying the Defendant's obligation support the conclusion that the Defendant did not act in "good faith" so as to be entitled to the immunity available under Sec. 548(c).

B. *Protection Under Sec. 550(b)*

 Defendant contends that the provisions of 11 U.S.C. Sec. 550(b) prevent the

Trustee from recovering the November 16, 1986 payment of Two Hundred Thousand & 00/100 Dollars ($200,000.00).[14] The Defendant's argument must fail on two grounds. First, as discussed above, Defendant did not act in good faith. Second, under the facts presented, we find that the Defendant was the initial transferee of the Two Hundred Thousand & 00/100 Dollars ($200,000.00), rather than a mediate transferee.

Defendant contended that Malcolm Jacobs Aviation, Inc., was the initial transferee of the Two Hundred Thousand & 00/100 Dollars ($200,000.00), with Mr. Rice acting as the immediate transferee, thereby making FIRST NATIONAL the mediate transferee entitled to Sec. 550(b) protection. The evidence conclusively established that Malcolm Jacobs Aviation, Inc., purchased an asset of the Debtors and paid for it with a cashier's check. (Plaintiff Exhibit 5 to Summary Judgment Motion). As the purchaser, Malcolm Jacobs is not a transferee. Further, the evidence demonstrates that Mr. Rice was merely a conduit or agent of the Debtors and should not be considered a transferee. Mr. Rice testified that the cashier's check was endorsed in blank by Malcolm Jacobs. It was not endorsed over to Mr. Rice. (Rice deposition, pp. 36–38). Upon receipt of the cashier's check, Mr. Rice first took it to Mr. Cordek. Mr. Cordek instructed Mr. Rice to apply the check to the promissory note. Mr. Bradfield declined to apply the funds to the promissory note until the check had cleared. Mr. Rice then requested that the check be placed in Mr. Cordek's account. Mr. Bradfield again declined and insisted that Mr. Rice endorse and deposit the check because the check could not be applied to the note so long as it constituted "uncollected funds." (Rice deposition, pp. 179–180; CJB pp. 54–55). It

---

12. *See In re Baker & Getty Finan. Serv.,* 88 B.R. 137, 138 (Bankr.N.D.Ohio 1988).

13. *In re Baker & Getty Finan. Serv., Inc.,* 93 B.R. 559, 562 (Bankr.N.D.Ohio 1988).

14. Sec. 550(b) provides:
(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

is clear on these facts that the Defendant, for whatever reason, intended to create an artificial initial transferee in Mr. Rice. On these facts, we hold that Mr. Rice may be disregarded as a transferee. *Bonded Fin. Serv. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988); *See also Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823, 830 (5th Cir.1959); *In re Colombian Coffee Co.*, 75 B.R. 177, 178–179 (S.D.Fla.1987); *In re Auto–Pak, Inc.*, 73 B.R. 52 (D.D.C. 1987); Comment, *Guarantees and Section 548(a)(2) of the Bankruptcy Code*, 52 U.Chi.L.Rev. 194 (1985).

In conclusion, since Defendant did not act in good faith and was the initial transferee, Defendant is not entitled to protection under Sec. 550(b) of the Code.

## VI. RECOVERY OF VEHICLES PLEDGED AS COLLATERAL

The Trustee also seeks summary judgment with respect to the proceeds of the sale of two automobiles. The automobiles had been offered as collateral on the promissory note by Mr. Cordek. The first automobile is a 1986 Audi titled in the name of BAKER & GETTY. (Plaintiff Exhibit 10 to Motion for Summary Judgment). As evidenced by Exhibit 10, the Defendant perfected a lien on this automobile on November 18, 1986, well within the ninety-day (90–day) preference period. BAKER & GETTY was not an obligor on the promissory note. (Response to Requests for Admissions 5 and 14). The second automobile is a 1957 Porsche in which the Defendant never had a security interest. (Response to Requests for Admissions 15 and 16).

In the absence of any evidence of a supportable claim to these proceeds by Defendant, we hold that the Trustee is entitled to the proceeds of sale of both automobiles.

## VII. PREJUDGMENT INTEREST AND COURT COSTS

The Trustee has requested prejudgment interest from the date of the filing of this proceeding, September 1, 1987. FIRST NATIONAL concedes the Trustee's entitlement to prejudgment interest in its Memorandum in Opposition to the Motion for Summary Judgment, but argues that the Court should limit any award of prejudgment interest to the date of the filing of the First Amended Complaint, September 22, 1988. Defendant points out that the Trustee made no demand for prejudgment interest prior to September 22, 1988. This Court has consistently held that prejudgment interest is appropriate from the earlier of the date upon which demand is made for the return of a preference, or the commencement of the adversary proceeding. *Rafoth v. Bailey (In re Baker & Getty Fin. Serv., Inc.)*, 88 B.R. at 800. In the absence of anything more than a mere assertion that the Court should limit interest to that accruing after September 22, 1988, we see no reason to depart from our prior holdings.

In summary, Plaintiff is entitled to summary judgment recovering a total of Two Hundred Forty–Five Thousand, Eight Hundred & 00/100 Dollars ($245,800.00) in payments made to Defendant FIRST NATIONAL on a promissory note executed by PHILIP CORDEK on August 27, 1986, on the proceeds of sale of the 1986 Audi and 1957 Porsche, and prejudgment interest on those amounts from September 1, 1987, to the date which these sums are paid to the Trustee.

As both are in default of appearance herein, this Order will effectively dispose of any claims or interests of Defendants PHILIP CORDEK and MIKE GARRIGA in the 1986 Audi, 1957 Porsche, and 1979 Porsche automobiles involved in this proceeding, or any proceeds from the sale of these automobiles.

An appropriate Order shall issue.