**DEBORAH LESLIE, LTD., Plaintiff,**

v.

**RONA, INC. and Erwin Rona,
Defendants.**

**Civ. A. No. 84–0759–S.**

United States District Court,
D. Rhode Island.

March 26, 1986.

Higgins, Cavanagh & Cooney, Gerald C. DeMaria, Robert J. Quigley, Jr., Providence, R.I., for plaintiff.

Mandell, Goodman, Famiglietti & Schwartz, Ltd., Mark S. Mandell, Susan Marcotte Carlin, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This is a civil action brought by means of an eight count complaint filed on December 6, 1985. This court's jurisdiction is premised on the existence of both federal law questions, 28 U.S.C. § 1331, and the presence of diversity of citizenship (including the requisite minimum amount in controversy). 28 U.S.C. § 1332(a).

At issue is the right to a jury trial under the auspices of the National Stamping Act, 15 U.S.C. § 291 et seq. (Act). The inquiry is one of apparent first impression.

## I.

In the first two counts of the complaint, the plaintiff, Deborah Leslie, Ltd. (Leslie), seeks compensatory and punitive damages and attorneys' fees under a specific provision of the Act, viz., 15 U.S.C. § 298(b).[1] Leslie is a Delaware corporation headquartered in New York. Plaintiff contends that defendant Rona, Inc. and (inferentially) its sole shareholder and president, Erwin Rona,[2] entered into an agreement whereby they would supply Leslie with sterling silver castings. The plaintiff alleges that the castings contemplated by the contract were subject to the provisions of the Act, and that the castings actually furnished by Rona, although marked with the word "sterling," failed to contain enough pure silver to warrant the defendants' use of that nomenclature. (Congress has declared that the words "sterling" or "sterling silver" may not be marked on any "article, or upon any tag, card or label attached thereto, or upon any box, package, cover, or wrapper in which such article is encased or enclosed ... unless such article or parts thereof purporting to be silver contains nine hundred and twenty-five one-thousandth parts pure silver," with an allowed divergence in the fineness of "four one thousandth parts from the foregoing standards ..." 15 U.S.C. § 296.) The Bard of Avon, dealing with a somewhat different (but equally suspect) precious metal, captured the essence of the plaintiff's jeremiad poetically:

All that glitters is not gold/
Often have you heard that told.

W. Shakespeare, *The Merchant of Venice*, act II, sc. vii, 1. 65–66 (1597).

---

1. 15 U.S.C. § 298(b) provides:

   Any competitor, or competitor of a customer of any person in violation of section 294, 295, 296, or 297 of this title, or any subsequent purchaser of an article of merchandise which has been the subject of a violation of section 294, 295, 296, or 297 of this title, shall be entitled to injunctive relief restraining further violation of sections 294 to 300 of this title and may sue therefor in any district court of the United States in the district in which the defendant resides or has an agent, without respect to the amount in controversy, and shall recover damages and the cost of suit, including a reasonable attorney's fee.

   The court notes, parenthetically, that the statute makes no provision for an award of exemplary damages in a customer suit.

2. Rona, Inc. is a Rhode Island corporation and its principal offices are located there. Erwin Rona is a citizen of Rhode Island. Inasmuch as the two defendants are indistinguishable for purposes of the matter now sub judice, the court will refer only to Rona, Inc. (Rona) in the pages which follow, but the decision applies with equal force to both respondents.

The complaint was answered in due course and the defendants demanded a trial by jury. *See* Fed.R.Civ.P. 38(b). The court then held the initial scheduling conference mandated by Fed.R.Civ.P. 16(b). At that time, the defendants' jury demand became the cynosure of all eyes. More specifically, its propriety was called into question. Because the defense (as was its due) insisted on pressing the demand and because the plaintiff expressed the opinion that jury intervention was impermissible in a suit under the Act, the court entered an order to show cause why the Rule 38(b) demand should not be stricken and established a briefing schedule. The parties have filed memoranda on the issue. (The last such brief was received on March 7, 1986.) Oral argument has been waived. This rescript comprises the court's conclusions concerning this metalline issue.

## II.

The National Gold and Silver Stamping Act of 1906 was amended in 1970 to provide civil remediation for misrepresentation of the quality of articles made from gold and silver. *See* Pub.L. No. 91–366, § 1(b), 84 Stat. 690 (1970). To delve deeper into the congressional alchemy, section 1(b) of Pub.L. No. 91–366 added sections (b)–(e) to 15 U.S.C. § 298. *Id.* Subsection (b) (which governs the first two counts of Leslie's complaint) granted private rights of action to competitors, customers of competitors, and subsequent purchasers of materials covered by the Act. 15 U.S.C. § 298(b). Congress provided a relatively full panoply of remedies for violations of this sort. The statute, in addition to injunctive relief, allowed recovery of damages "without respect to the amount in controversy," as well as costs of suit and attorneys' fees. *Id.*

---

**3.** 15 U.S.C. § 298(c) provides:

Any duly organized and existing jewelry trade association shall be entitled to injunctive relief restraining any person in violation of section 294, 295, 296, or 297 of this title from further violation of sections 294 to 300 of this title and may sue therefor as the real party in interest in any district court of the United States in the district in which the defendant

The benefices of the Act also extended to so-called jewelry trade associations (JTAs). JTAs were allowed to bring suit for injunctive relief in order to prevent offenders from transgressing the law's requirements. 15 U.S.C. § 298(c).[3] If successful, an association could recover costs of suit (including counsel fees). *Id.* The Act is even-handed; it erects several barriers to deter those who may be inclined to utilize the statute frivolously or maliciously, *e.g.*, 15 U.S.C. §§ 298(c), 298(d), but exegetic treatment of those salutary provisions seems impertinent at this juncture.

Despite the care and detail with which § 298 has been drafted, it fails to indicate explicitly whether the private rights of action which it forges are triable, in whole or in part, to a jury.

## III.

■ The seventh amendment to the federal Constitution is the touchstone of any reasoned analysis anent the availability of civil jury trials in the federal courts. The seventh amendment intones:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

As is clear from the text, the Framers preserved the right to jury trial in all suits at common law. Their basic purpose was to maintain the right to a jury trial as it existed when they adopted the amendment in 1791. *In re U.S. Financial Securities Litigation*, 609 F.2d 411, 421 (9th Cir.1979), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980), *citing Parsons v.*

---

resides or has an agent, without respect to the amount in controversy, and if successful shall recover the cost of suit, including a reasonable attorney's fee. If the court determines that the action has been brought frivolously, for purposes of harassment, or in implementation of any scheme in restraint of trade, it may award punitive damages to the defendant.

*Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830). *See generally* James, *Right to a Jury Trial in Civil Actions*, 72 Yale L.J. 655, 655–63 (1963). Because the seventh amendment speaks in terms of preservation, an historical test has been employed to determine its application. Suits in which traditionally legal rights were to be heard and determined have been jury-eligible; those wherein predominantly equitable remedies were to be administered were thought triable to the court. *United States v. Missouri River Breaks Hunt Club*, 641 F.2d 689, 692 (9th Cir.1981).

■■■ The proposition, however, is more easily stated than applied. The dividing line does not depend on the character of the overall action, but instead is determined by "the nature of the issue to be tried." *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). An issue is considered "legal" when its resolution involves the ascertainment and determination of legal rights or when it justifies a remedy traditionally granted by common law courts. *See, e.g., In re Evangelist*, 760 F.2d 27, 29 (1st Cir.1985); *Whitlock v. Hause*, 694 F.2d 861, 863 (1st Cir.1982). An "equitable" issue is one where, whether because of the inadequacy of conventional legal remedies or the need to defeat special kinds of unfairness, courts of chancery have historically intervened. *Ex parte Boyd*, 105 U.S. (15 Otto) 647, 657, 26 L.Ed. 1200 (1881). *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is ... the absence of an adequate remedy at law.") (footnote and citation omitted); *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 95, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932) (legal remedy of trover adequate; jury trial permitted). Put another way, legal principles control except where some recognized ground of equity jurisprudence flourishes. *See Tilton v. Cofield*, 93 U.S. (3 Otto) 163, 167, 23 L.Ed. 858 (1876). Howsoever the standard is phrased, the balance is tilted in favor of trial by jury. *E.g., Curtis v. Loether*, 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974) ("[W]hen Congress provides for enforcement of statutory rights in a civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.") (footnote omitted).

## IV.

■■■ Where, as here, an action is founded upon a federal statute, defining "the nature of the issue to be tried" is, in the first instance, a matter of congressional intent. *Pernell v. Southall Realty*, 416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974); *Pomon v. General Dynamics Corp.*, 574 F.Supp. 147, 149 (D.R.I.1983). The court thus turns to the archives of Congress in search of pay dirt.

As noted, *see ante* Part II, the Act itself does not expressly state whether a jury trial can be had under 15 U.S.C. § 298(b). The legislative history is likewise tenebrous. The report of the House Interstate and Foreign Commerce Committee, which discussed the purpose and meaning of Pub L. No. 91–366, does demonstrate that persons suing under the Act are eligible to "recover for any damages which they may have suffered as a result of the false marketing." H.R. Rep. No. 91–928, 91st Cong., 1st Sess. 1, *reprinted in* 1970 U.S. Code Cong. & Ad. News 3592. To a certain limited degree, this language would tend to indicate that Congress meant plaintiffs to be able to recover "actual" damages for the harm which they suffered. To the same effect, the Senate report to the bill stated that, under the then proposed and now enacted 15 U.S.C. § 298(b), successful plaintiffs "would be able to obtain an injunction and could recover for any *actual monetary damage* which they may have suffered as a result of the false marketing." Sen.R. No. 91–194, 91st Cong., 1st Sess. 1 (emphasis added). While these passages smack of the creation of a legal

remedy, thereby permitting a jury determination as to the merits, they are less than entirely dispositive.[4]

In sum, the legislative record is uncertain. Not only is the body of the Act mute on the availability of trial by jury, but the legislative history is sparse and essentially unenlightening. In such straitened circumstances, a reviewing court must look elsewhere to divine the intent of the Congress with assurance.

## V.

■ The Supreme Court has provided direction in these precincts by way of a tripartite test. *Ross*, 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10. In the absence of explicit congressional guidance, a court should consider the following factors to determine if a given case or issue implicates seventh amendment concerns: (i) customs prevailing before the merger of law and equity, (ii) the nature of the remedy sought, and (iii) the practical abilities and limitations of juries. *Id.* The burden of *Ross* is, in effect, to make a "what if?" analysis: had the issue arisen before the historic distinction between law and equity became blurred, which "side" of the tribunal would have entertained it? *See Evangelist*, 760 F.2d at 29. And, in so doing, the court must factor into the calculus such practical restrictions upon the perceived abilities of jurors as it may deem relevant. *Donovan v. Robbins*, 579 F.Supp. 817, 821 (N.D.Ill. 1984).

■ The *Ross* inquiry does not lend itself to mechanical application. The fact that an action was unfamiliar to the common law, *Pernell*, 416 U.S. at 374–75, 94 S.Ct. at 1729, or is one to enforce a subsequently created statutory right, *Curtis*, 415 U.S. at 194–95, 94 S.Ct. at 1008, does not in and of itself interdict the potential availability of a seventh amendment right to trial by jury. By the same token, courts are not at liberty to infer that an action is legal in character simply because monetary relief is sought. *Id.* at 196, 94 S.Ct. at 1009. The golden rule calls for plenary consideration of all of the *Ross* elements in their totality.

In this case, the analysis is rather straightforward. First, a damages suit by a purchaser under 15 U.S.C. § 298(b) closely parallels choses in action familiar to the common law. It is akin to an action for breach of contract (Leslie, for example, complains that goods which were provided pursuant to the supply agreement were not of the stipulated quality). In the same vein, such an action fits neatly within such timeworn tort rubrics as misrepresentation, fraud and deceit, and interference with advantageous economic relations. These forms of action—whether viewed as creatures ex contractu or ex delicto—are precisely the types of suits which, historically, would have been brought in a court of law. *E.g., Dairy Queen*, 369 U.S. at 477 & nn. 14, 15, 82 S.Ct. at 899 & nn. 14, 15 (claim for alleged breach of trademark licensing agreement, whether viewed as action for debt upon contract or as damages action for infringement, is of a "traditionally legal character" and is therefore "subject to cognizance by a court of law"; right to trial by

---

**4.** The congressional hearings on the House version of Pub.L. No. 91–366 were equally amphibolous in this connection. The only discernible reference to jury trials vel non comes about in a rather convoluted manner. The Act cedes discretionary authority for the award of punitive damages when the suit is brought by a JTA, if the presiding judge determines that the action has been maintained "frivolously, for purposes of harassment, or in implementation of any scheme in restraint of trade." 15 U.S.C. § 298(c). In debating the advisability of this penalty, one congressman, without challenge from any of his colleagues, speculated: "I assume a jury could probably determine the fact of harassment." H.R.Rep. No. 91–32, 91st Cong., 1st Sess. 12 (statement of Rep. Eckhardt). This pronunciamento, though uttered by a member of the subcommittee before which the bill was being considered, completely missed the mark. The award of punitive damages, and therefore the determination as to the existence of possible harrassment, is only obtainable under subsection (c); inasmuch as that section provides solely for injunctive relief, it is purely equitable in nature. Not only was Representative Eckhardt's assumption an erroneous one, but it offers no guidance whatever as to the legal/equitable nature of § 298(b). The Senate, it should be noted, held no hearings on the bill.

jury accorded); *Scott v. Neely*, 140 U.S. 106, 110, 11 S.Ct. 712, 714, 35 L.Ed. 358 (1891).

Leslie attempts to avert the compelling force of this conclusion by observing that the § 298(b) initiative is "not in the nature of an acknowledged common law action." Plaintiff's Memorandum at 2. The plaintiff embellishes this argument by noting that the legal definition of silver is "embodied in the statute and not in the common law." *Id.* Relying on *Pomon v. General Dynamics Corp.*, 574 F.Supp. at 147, Leslie reasons that the matter is therefore inappropriate for jury intervention.

This thumb-on-the-scale assay does not legitimately tip the scales. The asseveration ignores the vast body of precedent (including opinions of the Supreme Court) to the effect that, though a federal statute may create a cause of action—ipso facto using language that is wholly "statutory" in nature—trial by jury may nonetheless be invited by fair implication. *See, e.g., Curtis*, 415 U.S. at 191–98, 94 S.Ct. at 1006–10; *Ross*, 396 U.S. at 537–43, 90 S.Ct. at 737–40. *Pomon*, a case which held that a jury trial was impermissible under the Veteran's Reemployment Rights Act, 38 U.S.C. §§ 2021–2026, is entirely inapposite. In that instance, the legislative history of the statute under scrutiny dictated the result. *Pomon*, 574 F.Supp. at 149–51. As previously mentioned, the annals of the Congress relative to the passage of the National Stamping Act are devoid of similar signposts. *Pomon*, therefore, does not grubstake this claimant's prospects.

■ The second prong of the *Ross* trident points in the same direction. The statute, while envisioning injunctive relief where needed, provides for actual damages. A recovery of this sort comprises one of the classic remedies traditionally obtainable on the law side. *Cf. Curtis*, 415 U.S. at 194, 94 S.Ct. at 1008 (damages

action under 42 U.S.C. § 3612 sounds basically in tort; statute merely defines a new legal duty). To be sure, chancery courts have long awarded money damages ancillary to stereotypical equitable redress. *E.g., Floyd v. Ring Construction Corp.*, 165 F.2d 125, 129 (8th Cir.), *cert. denied*, 334 U.S. 838, 68 S.Ct. 1496, 92 L.Ed. 1763 (1948). But, this does not mean that the equity side has asserted a primary claim to monetary redress; rather, the granting of such money damages flows from what has been called "clean-up" jurisdiction: equity strives to afford complete relief between the parties once its jurisdiction has attached, and damage awards are sometimes necessary to accomplish this objective "incidental to the equitable relief that supplied jurisdiction initially." *Whitlock*, 694 F.2d at 863.

Any attempt to cram this case into that mold would require an excess of (unwarranted) mental gymnastics. 15 U.S.C. § 298(b) in no way suggests that damages are merely a throw-in palliative, incidental to equitable relief. As this case aptly illustrates, it is extremely unlikely that "any subsequent purchaser of an article of [misbranded] merchandise," *id.*, would be in a position where a restraining order would help; having bought the goods and then discovered the seller's chicanery, the purchaser's usual remedy would be to make whole its losses in a dollars-and-cents fashion. The extension of the prophylaxis of the Act to end purchasers is sterling evidence that Congress did not intend the injunctive tail to wag (or overshadow) the damages dog.[5]

The final furculum of the *Ross* test requires the court to assess the complexity of the issues to be tried vis-a-vis the limitations and abilities of jurors generally. This court has high regard for the perspicacity of juries, and that esteem certainly outdis-

---

5. In any event, if a particular issue is "legal" in character—and Leslie's damages claim appears to fit that rubric—the right to jury trial thereon cannot be lost by artificially subordinating the claim to an equitable issue in the case. *Dairy Queen*, 369 U.S. at 470–73, 82 S.Ct. at 896–97.

Although the Federal Rules of Civil Procedure now allow joinder of a mixture of issues in a single "civil action," the right to have a jury determine the legal issues must nevertheless be preserved intact. *Id.*

tances any argument that the niceties of a § 298(b) damages suit are beyond the ken of talesmen. Indeed, the umbilical question—the quantification in coin of the realm of the harm inflicted by mismarking—is exactly the sort of question that juries have resolved satisfactorily for centuries in, say, contract or tort actions. The utter absence of any unusual or inordinate complexity once again counsels in favor of the extension of seventh amendment protection to parties to a damages action brought in pursuance of 15 U.S.C. § 298(b).

■ All three prongs of *Ross* therefore signal that damage actions under 15 U.S.C. § 298(b) are eligible for trial by jury. The court so holds. In reaching this conclusion, the court emphasizes that the damages described under the statute are actual in nature. 15 U.S.C. § 298(b). They are in no way discretionary with the court. They are not limited in amount, either on a per-incident basis or in the aggregate. As the Supreme Court pointed out in *Curtis* (in the course of contrasting the equitable relief envisioned under Title VII, 42 U.S.C. § 2000e *et seq.*, with the actual and punitive damages prescribed by 42 U.S.C. § 3612 for violation of Title VIII):

> In Title VII cases ... the courts have relied on the fact that the decision whether to award backpay is committed to the discretion of the trial judge. There is no comparable discretion here: if a plaintiff proves unlawful discrimination and actual damages, he is entitled to judgment for that amount ... Whatever may be the merit of the 'equitable' characterization in Title VII cases, there is surely no basis for characterizing the award of compensatory and punitive damages here as equitable relief. (footnote omitted).

415 U.S. at 197, 94 S.Ct. at 1010. *Cf. Chappell & Co., Inc. v. Palermo Cafe Co.*, 249 F.2d 77, 81–82 (1st Cir.1957) (under 17 U.S.C. § 101 [predecessor to the present 17 U.S.C. § 504(c)(1)], private right of action found equitable in nature, in that statute limited total damage award and vested discretion in the court as to amount).

The fact that the statute permits the recovery of actual damages is telling in another way as well. Section 298(b) sweeps beyond restitution, a proposition which is evident from the inclusion of classes of eligible suitors apart from direct customers of a mismarking vendor—private rights of action are ceded to competitors, customers of competitors, and end purchasers, in addition to those in contractual privity with the miscreant. 15 U.S.C. § 298(b). And, while "restitutionary remedies are basically equitable in nature," *In re Seatrade Corporation*, 345 F.2d 785, 787 (2d Cir.1965) (per curiam), an actual damage anodyne, presumably extending as here to consequential losses and special damages, belongs genetically on the law side.

## VI.

The court concludes that, in a private action under 15 U.S.C. § 298(b) brought exclusively to secure actual damages and redress ancillary thereto, a trial by jury is available. The plaintiff's arguments to the contrary prove, upon close examination, to be little more than fool's gold. And, since Rona has seasonably staked its claim to such a trial, Fed.R.Civ.P. 38(b), the plaintiff's effort to procure a bench trial cannot pan out.

Cause has been shown. The court declines to strike the defendants' claim of trial by jury and will this day enter a pretrial order, Fed.R.Civ.P. 16(b), contemplating prosecution of the case in that mode.

*So ordered.*