**In re Richard H. FRIEDBERG, Debtor.**

**Alec H. CHAPLIN, As Agent for The Chaplin Group, Plaintiff,**

**v.**

**The HARBISON GROUP, a South Carolina General Partnership and Richard H. Friedberg and Roger N. Greene, as General Partners, Defendants.**

**Bankruptcy No. 87 B 10819 (CB).**
**Adv. No. 87–6030A.**

United States Bankruptcy Court, S.D. New York.

Oct. 20, 1989.

See also, D.C., 87 B.R. 3.

Richardson, Plowden Grier & Howser, Columbia, S.C. (F. Barron Grier, III, of counsel), Dewey, Ballantine, Bushby, Palmer & Woods, New York City (Lori Lapin Jones, of counsel), for Alec Chaplin.

Levin & Weintraub & Crames, New York City (Mitchel H. Perkiel and Howard A. Becker, of counsel), for Richard H. Friedberg.

Adams, Quackenbush, Herning & Stuart, Columbia, S.C. (Hardwick Stuart, Jr., of counsel), for The Harbison Group.

## DECISION ON DEMAND FOR A JURY TRIAL

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

This Court must rule on a motion made by the defendants of this adversary proceeding to strike the demand for a jury trial made by the plaintiff.

### Facts

The adversary proceeding arises out of a real estate contract entered into by The Chaplin Group ("Chaplin") and The Harbison Group ("THG"), a co-defendant in this suit. THG is a South Carolina general partnership which owns, develops and sells

approximately seven hundred fifty (750) acres of developed and undeveloped real estate (the "Realty") located in the counties of Richland and Lexington, South Carolina.

Co-defendants Richard Friedberg ("Friedberg") and Roger N. Green ("Greene") are both general partners in THG. Friedberg holds or controls a seventy (70%) percent interest and Greene holds the remaining thirty (30%) percent interest.

In April 1987, THG and Chaplin entered into an agreement (the "Agreement") for the sale of the Realty for $15 million. Chaplin gave THG an earnest money deposit of $300,000 (the "Deposit"). The closing (the "Closing") was scheduled for July 7, 1987. The Agreement allowed for the extension of time for the closing date up to no later than September 8, 1987. If Chaplin sought an extension, it was required to pay to THG an extension fee of $700,000 on or before the closing scheduled for July 7.

On May 1, 1987, approximately two (2) weeks after the execution of this Agreement, an involuntary Chapter 7 petition was filed against Friedberg pursuant to § 303 of the Bankruptcy Code (the "Code"). On May 26, 1987, Friedberg filed a petition for reorganization under Chapter 11, § 301 of the Code, with this Court. As of the Chapter 11 filing, Friedberg has continued in the management and operation of his various businesses and properties as a debtor in possession pursuant to §§ 1107 and 1108 of the Code.

After being apprised of the bankruptcy proceedings against Friedberg, Chaplin's counsel informed THG in writing that a Court approval of the impending sale was necessary in order to go forward with the Closing. In response to Chaplin's concern, Friedberg filed with this Court on June 15, 1987, an application seeking authority, *inter alia*, for the execution of the sale of the Realty. On July 1, 1987, this Court issued an order (the "Sale Order") approving the Agreement and authorizing Friedberg to cause THG to go forward with its obligation under the Agreement.

On July 6, 1987, one (1) day before the scheduled closing, Chaplin's counsel informed THG, by letter, that it would not go forward with the Closing, alleging that the Agreement was rescinded because of fraudulent misrepresentations made by the principals of THG when entering into the Agreement. THG represented to Chaplin that it was prepared and willing to close on the scheduled date, but Chaplin failed to close.

Shortly thereafter, on July 16, 1987, Alec Chaplin, as agent for Chaplin, commenced an action (the "State Court Action") by complaint (the "Complaint") against Friedberg and the other defendants (Greene and THG) seeking, *inter alia*, the recovery of the pre-petition Deposit. This action has made its way to two states and three courts. Defendants successfully sought removal of the State Court Action from the state court (the "State Court") to the United States Bankruptcy Court for the District of South Carolina (the "S.C. Bankruptcy Court"). Friedberg, with the consent of the other defendants, then applied for an order to transfer venue of this adversary proceeding to this Court, as being the appropriate forum to adjudicate the rights of all the parties. Chaplin unsuccessfully sought to sever the claim against Friedberg and have the claims against THG and Greene remanded to the State Court or, in the alternative, to have the S.C. Bankruptcy Court abstain from hearing the adversary proceeding and remand it, in its entirety, to the State Court. After hearing oral arguments, the S.C. Bankruptcy Court transferred venue of the entire adversary proceedings to this Court (the "Adversary Proceedings").

Within two (2) days of the S.C. Bankruptcy Court's decision to transfer venue, Chaplin commenced a second action in the State Court (the "Second State Court Action"), naming only THG this time, seeking recovery of the Deposit. After obtaining a secured interest in the Realty, pursuant to the Second State Court Action, Chaplin made an application with this Court, under Rule 41(a)(2) of the Federal Rules of Civil Procedure, to dismiss the adversary proceeding without prejudice. Chaplin also made a motion in the State Court for an order permitting Chaplin to amend its com-

plaint to purge therefrom Friedberg and Greene and to prosecute the adversary proceedings in the State Court.

On January 6, 1988, the State Court issued an order staying the Second State Court Action until this Court issued a decision. This Court thereafter issued an order which, *inter alia,* denied Chaplin's motion to dismiss.

In a final attempt to remove the adversary proceeding out of this Court, Chaplin moved, on March 2, 1988, the United States District Court for the Southern District of New York to withdraw the Adversary Proceedings from the Bankruptcy Court. The District Court denied the motion holding that this Court was the appropriate forum to decide whether or not the adversary proceeding was a "core" proceeding.

In August 1988, this Court made a determination that the Adversary Proceeding was a "core" proceeding over which this Court could issue a final determination.

This Court must make a determination on one more procedural issue before it can decide on the merits of the Adversary Proceeding. The defendants have made a motion to strike the demand for a jury trial made by plaintiff Alec Chaplin.

*Discussion*

■ The Bankruptcy Court is the appropriate forum to determine whether there is a right to a trial by jury. In *In re Energy Resources Co., Inc.,* 49 B.R. 278, 281 (Bankr.D.Mass.1985); *Rafoth v. National Union Fire Ins. Co.,* 88 B.R. 137, 140 (Bankr.N.D.Ohio 1988).

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." "Suits at common law" has been interpreted to mean "not merely suits, which the *common law* recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contra distinction to those where equitable rights alone were recognized, and equitable remedies were administered...." *Parsons v. Bedford,* 3 Pet. 433, 446–447, 7 L.Ed. 732 (1830) (emphasis in original).

In a recent decision, *Granfinanciera v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court addressed the issue of a person's right to a jury trial in a bankruptcy proceeding. In determining whether a right to a jury trial existed, the Court rejected the core/non-core analyses, that had been used by the Bankruptcy court, and instead adopted a three step analysis based on the traditional Seventh Amendment legal/equity analysis. The Court first compared the action before it to " '18th Century actions brought in the Courts of England prior to the merger of the courts of law and equity.' " *Id.* 109 S.Ct. at 2790. Secondly, the Court examined the remedy to determine whether it was " 'legal or equitable in nature." *Id.* Thirdly, if, after consideration of the above factors, it appeared that a jury trial exists, the Court required a determination as to "whether Congress may assign and has assigned resolution of the relevant claim to an non-Article III adjudicative body that does not use a jury as a factfinder." *Id.*

Although the analyses in *Granfinanciera* is controlling in the case at bar, its narrow holding is not. The Supreme Court answered in the affirmative the narrow issue of "whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." *Id.* at 2787. In that case the bankruptcy trustee commenced a cause of action pursuant to § 548 of the Code. In its discussion of whether a fraudulent transfer was of the kind traditionally brought at law, the Court referred to "fraudulent transfers and preferential transfers" interchangeably. *Id.* at 2790. The holding in this decision could therefore be applied to a situation where the trustee sought to recover a preferential transfer or a fraudulent transfer. The case at bar, however, is not one for recovery of a § 548 fraudulent transfer as in *Granfinanciera* even though Chaplin's action is based on allegations of fraud. Instead Chaplin, a non-

debtor, seeks recovery of the Deposit from THG, also a non-debtor, based on common law fraud.

In deciding whether a right to a jury trial exists, the action must be characterized as either one traditionally brought at law or as one traditionally brought in equity. Herein lies a disagreement between the parties. Alec Chaplin, plaintiff, who made the demand for a jury trial, contends that this is a legal action for "fraud, breach of contract, conversion and unfair trade practices." Plaintiff's Memorandum, at page 3. Defendants, however, claim that this is an equitable action for recision of a contract and for restitution. Defendant's Reply Memorandum, at page 11.

In order to determine whether the adversary proceeding is equitable or legal in nature, the complaint must be closely examined. The complaint alleges that the defendants made fraudulent misrepresentations, on which Chaplin relied to its detriment, regarding the financial positions of the general partners of THG in entering into the Agreement. Complaint, at pages 3–4. Based on the claim of fraud, Alec Chaplin seeks a recovery of (1) the $300,000 Deposit, (2) legal fees incurred, (3) costs of the survey done and (4) the benefit of its bargain and loss profits. *Id.*

In essence what Alec Chaplin is seeking is a recision of the Agreement. He is not seeking to sue on the Agreement but rather nullify it altogether. In fact, Chaplin's counsel goes so far as to admit this in a letter, dated July 6, 1987, to THG in which it is stated that "because of the failure of the principals of [THG] to disclose material and material facts ... The Chaplin Group hereby rescinds the Agreement...." Defendant's Memorandum of Law, Exhibit A. Furthermore, in light of this Court's authorization, Alec Chaplin and The Chaplin Group was provided with the opportunity to sue on the contract, if there existed a cause of action, but chose not to.

Actions for recision of contracts have traditionally been recognized as equitable. 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 38.23 (2d. Ed.1988); *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 204, 57 S.Ct. 377, 378, 81 L.Ed. 605 (1937); *In re Energy Resources Co. Inc.*, 49 B.R. 278, 283 (Bankr.D.Mass.1985) (The Bankruptcy Court concluded that relief sought was equitable because plaintiff was seeking cancellation of a contract). Therefore, Chaplin's complaint, insofar as it seeks recision of the Agreement, is an equitable action.

The complaint alleges fraud as its basis for recision of the Agreement. The Supreme Court has held that where legal and equitable issues are joined in one action the right to a jury trial cannot be lost simply by virtue of the joinder of the issues. *Dairy Queen v. Wood*, 369 U.S. 469, 472–73, 82 S.Ct. 894, 896–897, 8 L.Ed.2d 44 (1962). It has been noted that "[c]harges of fraud raise difficult questions concerning the right to jury trial, since fraud 'is not distinctively either a legal issue or one of an equitable nature,' and [therefore] the jury right turns on the remedy sought and the context in which the claim of fraud arises." C. Wright and A. Miller, Federal Practice & Procedure § 2311 (1971). *Skippy v. CPC*, 674 F.2d 209, 214 (4th Cir.1982). In light of the difficulty in characterizing fraud and because it was raised in the context of an equitable action to rescind a contract, the right to a jury trial in this case will not attach simply because fraud was asserted in the complaint. This Court must make further inquiry.

The next level of inquiry, therefore, is to determine what kind of remedy is being sought. Again, there exists disagreement between the parties as to the type of remedy requested for by Alec Chaplin. He claims to be seeking "money damages", a legal remedy. Admittedly, the plaintiff does seek the return of the earnest money deposit as well as other monies, but that alone does not determine the kind of relief sought. "The mere fact that [the plaintiff] has designated the relief ... [sought] as 'damages' does not mean that [the plaintiff] is automatically entitled to a jury trial." *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 835 F.2d 45, 46

(2d Cir.1987). The right to a jury trial depends on what in essence a party is seeking and not the manner in which such party chooses to frame the remedy. *Diary Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894. ("Although the Court must examine all pleadings ..., the right to a jury trial cannot be made to depend solely upon the choice of words used in any particular pleading...."); *Towers v. Titus,* 5 B.R. 786, 790 (Bankr.N.D.Ca.1979); *In re Evangelist,* 760 F.2d 27, 31 (1985) ("[T]he right to a jury trial cannot turn on the simple substitution of a different word.... Otherwise, any equitable action for money, say for restitution, could become a legal one by the use of the word damages in the place of the word 'restitution'.")

Chaplin, in the case at bar, is in essence seeking restitution which, if granted, will return the parties to the position they were in prior to the Agreement. Restitution is an equitable remedy "by which defendant is made to disgorge ill-gotten gains or to restore the status quo, or both." 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 38.24[2] 2d. ed. (1988). The courts have recognized that money may flow from equitable relief. *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974) (The court observed that "[e]ven though a complaint seeks monetary relief, it may nonetheless not necessarily be legal in nature."); *Deborah Leslie Ltd. v. Rona Inc.,* 630 F.Supp. 1250, 1254 (D.R.I.1986) ("[C]ourts are not at liberty to infer that an action is legal in character simply because monetary relief is sought.") The Second Circuit has recognized that "not all money claims are triable to a jury" and that where restitution is "sought in the form and in the situations allowed in equity ... there is no right to a jury trial." *Securities & Exchange Comm. v. Com Chemical, Etc.,* 574 F.2d 90, 91 (2d Cir.1978).

Similarly, the court in *American Universal Inc. Comp. v. Pugh,* 821 F.2d 1352 (9th Cir.1987) noted that "[w]here monetary relief must necessarily be a part of the equitable remedy, the case remains equitable in nature. (citations omitted) Even though ... [the] complaint seeks monetary relief, the action is nonetheless equitable in nature because, 'where a plaintiff seeks to recover monies wrongfully withheld, the basis for such action is wholly equitable.' " *Id.* at 1356. See also *In re Energy Resources Co. Inc.,* 49 B.R. 278, 282 (Bankr. 1985); *Kastner v. Brackett,* 326 F.Supp 1151, 1152 (D.Nev.1971) ("If the relief provided is equitable rather than legal in nature, the right to a jury does not attach, even if financial restitution is part of the equitable relief available.")

Therefore, despite the fact that Mr. Chaplin seeks a return of money, it is in the nature of restitution and the right to a jury trial does not attach.

For the foregoing reasons, this Court finds that there does not exist a right to a jury trial in the case at bar and accordingly the third step in the Supreme Court's three set analysis is not addressed in this decision.

■ Having found that the present action is, in all respects, equitable and therefore the right to a jury trial does not attach, this Court can end its discussion there. This court, however, feels compelled to make a few final observations. The Supreme Court in *Granfinanciera,* 109 S.Ct. 2782, in addressing the public rights—private rights debate, reaffirmed its position in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) that where the bankruptcy court has jurisdiction over a party it could rule on that party's claim "without according [that party] a jury trial." *Id.* 109 S.Ct. at 2798. The Court reasoned that its holding in *Katchen* turned on the bankruptcy court's having " 'actual or constructive possession' of the bankruptcy estate" and because the petitioner had filed a proof of claim against the bankruptcy estate. *Id.* Therefore, the equitable jurisdiction of the bankruptcy court is invoked once a proof of claim is filed. After *Granfinanciera,* there can be no doubt as to the preclusive effect a filing of a proof of claim has on a party's right to a jury trial. The Court, however, did not go so far as to say that filing a proof of claim is the only means by which a party

can submit itself to the equitable jurisdiction of the bankruptcy court.

 There is no dispute between the parties as to the fact that Chaplin has not filed a proof of claim in the case at bar. Chaplin has, however, requested that the transaction between the parties be submitted to this court for approval. By letter, dated June 9, 1987, Chaplin's counsel informed THG that in order to go forward with the closing it needed, *inter alia*, "the application by which this sale has been presented to the Bankruptcy Court for its approval." Defendant's Reply Memorandum, Exhibit A. This demand was met and subsequent thereto this Court approved the Agreement and the impending sale. It cannot be any clearer that Chaplin willingly submitted itself to the jurisdiction of this Court. Moreover, at the time that Chaplin made its request, it was fully aware of the bankruptcy proceedings and, accordingly, must have been aware of any possible pre-petition allegedly fraudulent misrepresentations made by the principals, Greene and Friedberg, as to their respective financial situations. Chaplin, however, chose not to raise those issues and make a timely demand for a jury trial at that time but instead asked that this Court's equitable jurisdiction be invoked as to the transaction in question.

It is interesting to note that had Chaplin filed a proof of claim, it would have unknowingly invoked this Court's jurisdiction and accordingly a demand for a jury trial could have been denied. In essence, the filing of a proof of claim unwittingly subjects the party to jurisdiction by ambush. Here, however, Chaplin submitted to this court's jurisdiction willingly and with its eyes open. If a party can unconsciously submit to the bankruptcy court's equitable jurisdiction it logically follows that a party can also do so consciously and knowingly. Accordingly, this Court has jurisdiction to decide all issues arising from the transaction in question including the fraud issues raised by Chaplin.

## CONCLUSION

For the foregoing reasons, this Court grants the Defendant's motion to strike the plaintiff's demand for a jury trial.

Settle Order consistent with this decision on five (5) days' notice.