**In re B & E SALES COMPANY, INC., Debtor.**

**Fred J. DERY, Trustee, Plaintiff,**

v.

**NATIONAL BANK OF DETROIT, N.A., Defendant.**

Bankruptcy No. 88–05085–S.
Adv. No. 88–0709.

United States Bankruptcy Court, E.D. Michigan, S.D.

Oct. 23, 1990.

Timothy Fusco, Julia D. Learned, Kramer Mellen, P.C., Southfield, Mich., for plaintiff.

Peter Alter, Honingman, Miller, Schwartz & Cohn, Detroit, Mich., for defendant.

## OPINION AND ORDER RELATING TO MOTION FOR JURY TRIAL

WALTER SHAPERO, Bankruptcy Judge.

### I

#### *Jurisdiction*

The Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Rule 33 of the Local Rules of the United States District Court for the Eastern District of Michigan relating to reference of bankruptcy proceedings to the Bankruptcy Court.

### II

#### *Facts*

Debtor, B & E Sales Company, Inc. filed its Chapter 11 bankruptcy petition on July 28, 1988. NBD filed its secured claim against the estate in December, 1988. The present adversary proceeding, which seeks to avoid an allegedly fraudulent transfer of two million dollars to NBD, was initially filed by the Unsecured Creditors' Committee on September 23, 1988. The last pleading filed in this adversary proceeding directed to the issues triable by a jury was NBD's answer to the First Amended Complaint, which answer was filed on June 8, 1989. On November 27, 1989 the underlying bankruptcy proceeding was converted to a proceeding under Chapter 7, and Fred J. Dery was subsequently appointed trustee. Kramer Mellen, P.C. was appointed as special counsel to the trustee in this adversary proceeding on March 20, 1990. The Motion to Demand Trial by Jury was filed on June 13, 1990. The matter was submitted to the Court on briefs.

### III

#### *Issues*

The issues in this proceeding are:

(A) Does the Seventh Amendment entitle the trustee to a jury trial where the trustee seeks to avoid a fraudulent conveyance to a creditor who has filed a proof of claim against the estate?

(B) If the answer to the first question is "yes", should the trustee be afforded a jury trial notwithstanding his failure to have timely requested one.

### IV

#### *Positions of the Parties*

The moving party is the trustee, who argues that:

(A) He is entitled to a jury trial under *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), because in that case the United States Supreme Court recognized the right to a jury trial in proceedings to recover fraudulent transfers.

(B) The motion should be granted because a jury trial will not disrupt the schedule of the court, will not prejudice the defendant, and because good cause exists for the moving party's failure to timely file.

NBD argues that:

(A) The trustee has no right to a jury trial which only exists in fraudulent conveyance actions against creditors who have not asserted claims against the estate.

(B) The motion should be denied because the trustee's excuse for failure to timely file is devoid of merit and no compelling circumstances exist for granting the motion.

### V

#### *Conclusions of Law*

■ The trustee asserts no *statutory* right to a jury trial. Rather, the trustee asserts a *constitutional* right to trial by

jury under the Seventh Amendment, which provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. Since the amount in controversy is two million dollars, the Seventh Amendment gives the Trustee a right to a jury trial to the extent that this adversary proceeding is perceived to be a "suit at common law." In *Granfinanciera*, the Supreme Court outlined the analysis to be used in determining whether a case falls within the ambit of Seventh Amendment protection:

> We have consistently interpreted the phrase "Suits at common law" to refer to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Although "the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791," the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.
>
> \*   \*   \*   \*   \*   \*
>
> The form of our analysis is familiar. "First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." The second stage of this analysis is more important than the first. If, on balance, the two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign ... resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

*Granfinanciera*, 492 U.S. at 41–41, 109 S.Ct. at 2790 (citations omitted). Thus, an action which was recognized under English common law and which more closely resem-

bles an action at law than one in equity implicates the Seventh Amendment right to a jury trial. If the Seventh Amendment is implicated, the court must determine whether Congress can assign the action to a non-Article III, non-jury tribunal.

The Supreme Court, in *Granfinanciera*, concluded that fraudulent conveyance actions are legal in nature and could have been brought in the 18th–century English courts of law. Therefore, the Seventh Amendment is implicated and the last step of the *Granfinanciera* analysis must be examined: can Congress, notwithstanding the Seventh Amendment, authorize the Bankruptcy Court (or a non-Article III tribunal) to render a final judgment without the use of a jury? In *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Supreme Court stated:

> when Congress creates new statutory "public rights," it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be "preserved" in "suits at common law." Congress is not required by the Seventh Amendment to choke the already crowded federal courts with new types of litigation or prevented from committing some new types of litigation to administrative agencies with special competence in the relevant field.
>
> \*   \*   \*   \*   \*   \*
>
> Our prior cases support administrative factfinding in only those situations involving "public rights," *e.g.*, where the Government is involved in its sovereign capacity under an otherwise valid statute creating enforceable public rights. Wholly private tort, contract, and property cases, as well as a vast range of other cases, are not at all implicated.

*Atlas Roofing*, 430 U.S. at 455, 458, 97 S.Ct. at 1269, 1270. Thus, Congress can only assign adjudication of newly created statutory rights to non-jury tribunals because it is only these "public" rights that

are free from the strictures of the Seventh Amendment.

The rights asserted in the present fraudulent conveyance action are granted to the trustee by § 548 of the Bankruptcy Code. Thus they are arguably statutorily created "public" rights, and as such would appear to lack Seventh Amendment jury trial protection. Since this and other statutory rights can be tried without a jury, Congress could arguably have the power to eviscerate the Seventh Amendment simply by supplanting traditional "common law" causes of action with analogous statutory "public rights" which are tried without a jury. However, Article III of the Constitution obviates this threat by further restricting the class of statutorily created public rights that can be assigned to non-Article III Courts. Article III exclusively vests the judicial power of the United States in Article III courts, and allows for few exceptions. Only in these exceptional situations, where judicial power is not vested exclusively in the Article III courts, can Congress assign adjudication to non-jury administrative tribunals.

■ In *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court recognized that an exception to Article III adjudication is created by "the traditional principle of sovereign immunity, which recognizes that the Government may attach conditions to its consent to be sued." *Northern Pipeline*, 458 U.S. at 67, 102 S.Ct. at 2869. Thus, where a statutorily created public right involves a suit by or against the United States government, the principle of sovereign immunity suggests that Congress may assign the matter to a non-Article III tribunal as a condition to its consent to be involved in the suit. *Id.* at 69, 102 S.Ct. at 2870. A second exception, and the one relevant to the case *sub judice*, is grounded in Article I of the Constitution which guarantees the independent functioning of the legislative branch. In *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985), the Supreme Court held that:

Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly "private" right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary. To hold otherwise would be to erect a rigid and formalistic restraint on the ability of Congress to adopt innovative measures ... with respect to rights created by a regulatory scheme.

*Thomas*, 473 U.S. at 593–94, 105 S.Ct. at 3339–40. Beyond these two exceptions, Article III prohibits Congress from assigning the adjudication of statutory rights to nonjury tribunals. "If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court." *Granfinanciera*, 492 U.S. at 54–55, 109 S.Ct. at 2797. Thus, Article III prevents Congress from eviscerating the protections of the Seventh Amendment because it only allows Congress to assign to non Article III tribunals those statutory public rights which involve the government as a party or which are part of a legitimate federal regulatory scheme.

The Supreme Court in *Granfinanciera* found that the fraudulent conveyance action before it was more accurately characterized as a private rather than a public right. Clearly the government was not a party in the lawsuit, so the claim had to be closely integrated into a public regulatory scheme in order for determination by the bankruptcy court without a jury to be appropriate. The Court held that:

There can be little doubt that fraudulent conveyance actions by bankruptcy trustees—suits which we said "constitute no part of the proceedings in bankruptcy but concern controversies arising out of it"—are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchi-

cally ordered claims to a pro rata share of the bankruptcy *res.*

*Granfinanciera,* 492 U.S. at 56, 109 S.Ct. at 2798 (citations omitted). So, the fraudulent conveyance action was not seen as part of the bankruptcy regulatory scheme. The Court concluded that since the creditors in the case before it had not filed claims against the estate, the fraudulent conveyance action did not arise as part of the process of allowance and disallowance of claims, and was not integral to the restructuring of debtor-creditor relations. The Court therefore held that the creditor was entitled to a jury trial because Congress could not divest it of that right by creating a statutory fraudulent conveyance action which was analogous to the common law right. *Id.* at 58–59, 109 S.Ct. at 2799.

In reaching its conclusion, the Court read its prior opinions as holding that "under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claims depends upon whether the creditor has submitted a claim against the estate...." *Id.* at 58, 109 S.Ct. at 2799. Since *Granfinanciera,* the U.S. Bankruptcy Court for the District of Maine has dealt with a jury demand in a fraudulent conveyance action where the creditor had filed a claim against the estate. *See In re Paris Indus. Corp.,* 106 B.R. 344 (Bankr.D.Me.1989). Relying on *Granfinanciera,* the bankruptcy court denied the jury demand since the creditor had filed a claim. *Paris,* 106 B.R. at 345; *see also In re Friedberg,* 106 B.R. 50 (Bankr. S.D.N.Y.1989) (noting the preclusive effect that filing a proof of claim has on the right to a jury trial).

In the present case the creditor has filed a claim against the estate. The determination of the extent and nature of that claim is unquestionably part of the basic bankruptcy process of allowance and disallowance of claims. Potentially the amount of a creditor's claim in a bankruptcy estate can be offset, reduced or eliminated, if a fraudulent conveyance claim against that same creditor is successful. The fraudulent conveyance claim thus became inextricably intertwined with the claims allowance process and it is apparently that reali-

ty which makes the constitutional difference. Since the claims process (i.e.: the administrative necessity of disposing of both matters and completion of such as a necessary step in restructuring of debtor—creditor relations) is a paramount function of the bankruptcy scheme, a fraudulent conveyance claim against a creditor which has filed a claim against the estate must be treated as a public right which is to be adjudicated by a non-Article III, non-jury tribunal. Since such was permissibly assigned to the bankruptcy court under Congress' Article I powers, the Seventh Amendment gives the trustee no right to trial by jury.

■ Therefore, the Court holds that the Seventh Amendment does not entitle the trustee to a jury trial in this fraudulent conveyance action where the defendant has filed a claim against the estate. Given this result, the Court does not need to address the question of the merits of the request for a discretionary jury trial order.

IT IS SO ORDERED.