**In re Richard H. FRIEDBERG, Debtor.**

**Alec H. CHAPLIN, Plaintiff(s),**

**v.**

**The HARBISON GROUP, A South Carolina General Partnership and Richard H. Friedberg and Roger N. Greene, as General Partners, Defendant(s).**

**Bankruptcy No. 87 B 10819 (CB).**

**Adv. No. 87–6030A.**

United States District Court, S.D. New York.

Oct. 3, 1990.

As Amended Dec. 13, 1990.

Dewey, Ballantine, Bushby, Palmer & Wood (Lori Lapin Jones, of counsel), New York City, for appellant, Alec H. Chaplin.

Richardson, Plowden, Grier & Howser (F. Barron Grier III, of counsel), Columbia, S.C., for appellant, Alec H. Chaplin.

Levin & Weintraub & Crames (Mitchel H. Perkiel, Edward J. Lobello, of counsel), New York City, for appellee, The Harbison Group.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Presently before the Court is plaintiff's motion for leave to appeal an order of the bankruptcy court striking plaintiff's jury trial demand in the above-captioned adversary proceeding. For the reasons that follow, the motion is granted.

### BACKGROUND

The following facts are essentially set forth in the bankruptcy court's opinion, *see* 106 B.R. 50 (S.D.N.Y.Bankr.1989), and are, except where noted, undisputed. This adversary proceeding arises out of a real estate contract between the Chaplin Group ("Chaplin") and the Harbison Group ("Harbison"), a general partnership with two partners, the debtor, Richard Friedberg, and Roger N. Greene. Pursuant to this April 1987 contract, Chaplin agreed to purchase 750 acres of land from Harbison for $15 million, and in accordance with the agreement, Chaplin transferred a deposit of $300,000 to Harbison. The closing was scheduled for July 7, 1987.

Shortly after execution of the contract, however, Friedberg was placed in involun-

tary bankruptcy and eventually filed a voluntary petition for reorganization under Chapter 11. Neither Harbison nor Greene is in bankruptcy. After learning of Friedberg's bankruptcy, Chaplin demanded that Harbison obtain proof of its authority to close the sale from the bankruptcy court. Because the bankruptcy court issued an order approving the sale on July 1, 1987, Harbison maintains that it was ready, willing and able to go forward with the transaction as of the date of closing, July 7, 1987.

However, on July 6, 1987, Chaplin informed Harbison that it considered the transaction to have been rescinded because of Harbison's misrepresentations as to its partners' financial capacity. Thereafter, on July 16, 1987, Chaplin commenced an action against Harbison, Friedberg and Greene in South Carolina state court, which was first removed to the United States Bankruptcy Court for the District of South Carolina and then transferred to the Bankruptcy Court for the Southern District of New York.

Briefly, the complaint alleges that Chaplin was induced to enter the agreement in reliance on defendants' fraudulent misrepresentations and sets forth four claims for relief: fraud; breach of contract; conversion; and unfair trade practices. The relief sought is $500,000 including the $300,000 deposit, legal fees, and the costs of a survey. In addition, Chaplin seeks lost profits and punitive damages. Chaplin demanded a jury trial on all claims.

In August 1988, the bankruptcy court determined that the action was a "core proceeding" within the meaning of 28 U.S.C. § 157. See 106 B.R. 53. After discovery was completed, Harbison moved to strike the jury demand, which motion was granted on October 20, 1989. The court reasoned that Chaplin was "in essence" seeking recission and restitution—equitable remedies to which no jury right attaches. See 106 B.R. at 54–55.[1]

## DISCUSSION

■ A district court has jurisdiction to entertain an appeal of an interlocutory order of a bankruptcy judge, see 28 U.S.C. § 158(a) (1988), if that order involves (1) a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal thereof may materially advance the ultimate termination of the litigation. See, e.g., In re Hardwicke Co., 56 B.R. 244, 246 (S.D.N.Y.1985).[2]

■ The Second Circuit has held that review of interlocutory orders striking a jury demand is appropriate in that it serves to avoid an unnecessary trial. See Ruggiero v. Compania Peruana de Vapores, 639 F.2d 872, 873 (2d Cir.1981) (§ 1292(b)); Rosen v. Dick, 639 F.2d 82, 86 (2d Cir.1980) (same); Ross v. Bernhard, 403 F.2d 909, 910 (2d Cir.1968) (same), rev'd on other grounds, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); cf. Shore v. Parklane Hosiery Co., 565 F.2d 815, 818 (2d Cir. 1977), aff'd, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). But see Howard v. Parisian, Inc., 807 F.2d 1560, 1566 (11th Cir.1987). Therefore, the principal question here is whether there is a substantial ground for difference of opinion as to the bankruptcy court's determination.[3]

A determination as to whether a right to a jury trial attaches is a question of federal law. See Simler v. Conner, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam). Moreover, under the Seventh

---

1. The court also observed that by seeking the bankruptcy court's prior approval of the sale, Chaplin submitted to the court's equitable jurisdiction and thereby waived any right to a jury trial. See 106 B.R. at 55–56.

2. Section 158(a) provides in pertinent part that "[t]he district courts ... shall have jurisdiction to hear appeals ... from interlocutory orders and decrees, of bankruptcy judges." 28 U.S.C. § 158(a). Although no standards are set forth in § 158(a), the courts of this circuit generally apply the standards contained in 28 U.S.C. § 1292(b) (1988). See, e.g., Hardwicke, supra, 56 B.R. at 246; see generally 1 L. King, Collier on Bankruptcy, ¶ 3.03, at 3–194 (1989).

3. The parties do not contest and the Court finds that the issue as to whether a jury right attaches to a recission/restitution claim is a pure question of law. Moreover, the Court rejects Harbison's argument that to be "controlling," the issue of law must be determinative of other cases as well because the plain language of § 1292(b)

Amendment, a right to a jury attaches only to legal claims. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* — U.S. —, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *Granfinanciera, S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989).[4]

While the Court agrees with the bankruptcy court's finding that plaintiff is in essence seeking recission of the agreement and restitution,[5] this, however, does not end the inquiry. Although the Second Circuit has indicated that recission and restitution are traditionally equitable remedies, *see SEC v. Commonwealth Chem. Securities, Inc.,* 574 F.2d 90, 95–96 (2d Cir.1978) (action by SEC for injunction and disgorgement of profits); *see also Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir.) (ERISA action against trustees for removal and restitution), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984), it has recently held that a party seeking recission on the grounds of fraud is entitled to a jury trial in a bankruptcy proceeding. *See In re Ben Cooper,* 896 F.2d 1394, 1401–02 (2d Cir.), *cert. granted,* — U.S. —, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990). Moreover, it is not altogether clear that at common law, a law court lacked all power to order restitution.[6]

The Court therefore concludes that there is a substantial basis for a difference of opinion as to whether Chaplin is entitled to a jury trial.

## CONCLUSION

Accordingly, the motion for leave to appeal is granted. The Clerk of the Court is directed to file the Notice of Appeal. Appellant may file the usual cover sheet with the Cashier and obtain an assignment from the Bankruptcy wheel of the District Court for a Judge to hear the appeal. The Clerk of the Bankruptcy Court is requested to transmit the record to the District Court.

IT IS SO ORDERED

---

supports no such interpretation. *See* 16 Wright & Miller, Fed.Prac. & Proc. § 3930, at 159 (1977). Nor is *Brown v. Bullock,* 294 F.2d 415, 417 (2d Cir.1961), to the contrary. While the court there noted as a justification for granting the appeal that its determination would likely affect a large number of other suits, *see id.,* it nowhere indicated that this factor was essential.

4. To determine whether an action is legal the Court must examine the nature of the issues involved and the remedies sought. *See Granfinanciera, supra,* 109 S.Ct. at 2790; *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987).

5. Pursuant to South Carolina law, a party alleging fraudulent inducement may elect between two remedies, *i.e.,* affirm the contract and sue for damages or rescind the contract and recover any consideration given plus incidental damages. *See Baeza v. Robert E. Lee Chrysler,* 279 S.C. 468, 309 S.E.2d 763, 766 (Ct.App.1983). It

is obvious from the face of the complaint that Chaplin has elected to rescind the contract.

6. For example, in *Granfinanciera, supra,* the Court stated that "in cases of fraud or mistake ... a court ... will not sustain a bill in equity to obtain *only* a decree for the payment of money by way of damages when the like amount can be recovered at law in an action sounding in tort or for money had and received." *See Granfinanciera, supra,* 109 S.Ct. at 2793 (quoting *Buzard v. Houston,* 119 U.S. 347, 352, 7 S.Ct. 249, 252, 30 L.Ed. 451 (1886)) (emphasis added); *see also First Nat'l Bank v. Warren,* 796 F.2d 999 (7th Cir.1986) ("[r]emedies known as 'restitution' were available in courts of law and equity alike"); *Hensley v. E.R. Carpenter Co.,* 633 F.2d 1106, 1110 n. 5 (5th Cir. Unit A 1980); Restatement of Restitution, pt. 1, Introductory Note at 5–6 & § 4 (1937) (restitution at law through general assumpsit); W. Keeton, *Prosser & Keeton on Torts* §§ 94, 105 (5th ed.1984).