In re Richard H. FRIEDBERG, Debtor.

Alec H. CHAPLIN, as Agent for the Chaplin Group, Plaintiff/Appellant,

v.

The HARBISON GROUP, a South Carolina General Partnership; and Richard H. Friedberg and Roger N. Greene, as General Partners, Defendants/Appellees.

No. 90 Civ. 6933 (RJW).

United States District Court, S.D. New York.

July 30, 1991.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

This is an interlocutory appeal of an order of the Bankruptcy Court for the Southern District of New York (Blackshear, B.J.) which granted appellees' motion to strike appellant's jury demand in this adversary proceeding.[1] Plaintiff/Appellant Alec H. Chaplin, as Agent for the Chaplin Group ("Chaplin") seeks reversal of the bankruptcy court's order, arguing that Chaplin is entitled to a jury trial under the Seventh Amendment. Defendants/Appellees The Harbison Group ("THG"), Richard H. Friedberg ("Friedberg"), and Roger N. Greene ("Greene") urge affirmance of Judge Blackshear's order. For the reasons that follow, the order of the Bankruptcy Court is reversed.

## BACKGROUND

The following background facts are not disputed and are set out in the decision of Judge Blackshear. *See In re Friedberg*, 106 B.R. 50 (Bkrtcy.S.D.N.Y.1989).

1. Leave to appeal, pursuant to 28 U.S.C. § 158(a), was granted by the Honorable John E.

The instant adversary proceeding arises out of a real estate contract entered into by Chaplin and THG, a South Carolina general partnership which owns certain real estate located in South Carolina ("the Realty"). Friedberg and Greene are the general partners of THG, the former holding or controlling a 70% interest in THG, and the latter holding or controlling the remaining 30%.

In April, 1987, Chaplin and THG entered into an agreement (the "Agreement") pursuant to which Chaplin agreed to purchase, and THG agreed to sell, the Realty for $15 million. Chaplin gave THG an earnest money deposit of $300,000, and the closing was scheduled to take place on July 7, 1987. The Agreement provided that this date could be extended up until September 8, 1987; however if Chaplin sought an extension it was required to pay THG an extension fee of $700,000 on or before July 7, 1987.

On May 1, 1987, an involuntary Chapter 7 petition in bankruptcy was filed against Friedberg. On May 26, 1987, Friedberg filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. Neither THG nor Greene are in bankruptcy.

After learning of the bankruptcy proceedings involving Friedberg, Chaplin's counsel wrote to THG stating that in order to prepare for the July 7 closing Chaplin's bankruptcy counsel needed, among other things, "the application by which this sale has been presented to the Bankruptcy Court for its approval," and "a copy of the proposed Order to be presented to the Bankruptcy Judge approving the sale." Exhibit A to Brief of Defendants/Appellees, filed December 19, 1990. Friedberg filed with the Bankruptcy Court, on June 15, 1987, an application seeking authority for the sale of the Realty. The Bankruptcy Court approved the sale in an Order dated July 1, 1987, and authorized Friedberg to cause THG to proceed with its obligations under the Agreement.

Sprizzo in a Memorandum and Order dated October 3, 1990, 119 B.R. 433.

On July 6, 1987, the day before the closing was scheduled to take place, Chaplin's counsel informed THG by letter that Chaplin would not proceed with the closing. In the letter, Chaplin's counsel stated:

because of the failure of the principals of [THG] to disclose material and important facts concerning the prior judgments, lawsuits and bankruptcy concerning the principals of [THG], and because such failure to disclose amounted to misrepresentations, The Chaplin Group hereby rescinds the [Agreement] and refuses to enter into any type of partnership agreement with [THG].

Exhibit B to Brief of Defendants/Appellees. The letter further stated that, should a court ultimately determine that Chaplin was not entitled to rescind the Agreement, "then the sellers are in default because no closing could take place on July 7, 1987 since the appeal time in the Bankruptcy Court would not have expired." *Id.*[2] Chaplin demanded return of its $300,000 earnest money deposit plus survey costs, attorneys' fees, and other costs.

### A. *Procedural History of the Instant Adversary Proceeding.*

On July 16, 1987, Chaplin commenced an action in South Carolina state court against appellees herein. Appellees removed the action to the United States Bankruptcy Court for the District of South Carolina. Friedberg, with the consent of the other appellees, then successfully moved for a transfer of the entire action to the Bankruptcy Court for the Southern District of New York, in which his reorganization petition was and is pending.[3]

Thereafter, Chaplin commenced a second action in state court in South Carolina, naming only THG. Chaplin obtained a secured interest in the Realty in the second state court action and then moved before the Bankruptcy Court to dismiss the adversary proceeding without prejudice. Chap-

lin also moved in the state court to amend its complaint to drop Friedberg and Greene as defendants and then to proceed with the action in state court. The state court stayed the action before it pending decision by the Bankruptcy Court. The Bankruptcy Court subsequently denied Chaplin's motion to dismiss. On March 2, 1988, Chaplin moved in the United States District Court for the Southern District of New York to withdraw the adversary proceeding from the Bankruptcy Court. This motion was denied. The Bankruptcy Court then determined that the adversary proceeding constituted a "core" proceeding over which it could issue a final determination. That ruling is not before this Court on the instant appeal. In addition, the Bankruptcy Court denied appellees' motion for summary judgment by order dated March 27, 1989.

### B. *The Complaint in the Adversary Proceeding.*

In its complaint, Chaplin asserts four causes of action. The first cause of action alleges common law fraud. Chaplin claims that appellees misrepresented their financial conditions, that appellant relied on the truth of the representations, and in consequence suffered damage. As relief, Chaplin seeks the return of its $300,000 deposit plus interest, legal fees, and costs including the cost of surveys it performed, in the total amount of $500,000 actual damages plus punitive damages.

The second cause of action alleges breach of the Agreement by appellees. The complaint sets forth the clause of the Agreement which states:

If the transactions contemplated herein are not consummated on the Closing Date (July 7, 1987) because of THG's default, ... then at the option of the Purchase [sic] this Agreement shall ter-

---

**2.** This is a reference to the time to appeal the Bankruptcy Court's July 1 Order authorizing the sale. The Agreement provides that if the sale is not consummated on the closing date because of THG's default, and not extended by mutual agreement, then Chaplin is entitled to the return of the earnest money deposit.

**3.** Chaplin had attempted unsuccessfully to sever its claim against Friedberg and have the claims against THG and Greene remanded to the state court or, in the alternative, to have the entire action remanded to the state court.

minate on that date and Purchaser shall be entitled to the return of the Earnest Money and Extension Fee, if paid ...

Complaint, annexed as Exhibit C to Brief of Defendants/Appellees. Chaplin further alleges that THG did in fact default on the Agreement because the sale required the approval of the Bankruptcy Court, approval was not received until July 2, 1987, and the ten day appeal time would not expire until after the scheduled closing date. Accordingly, the complaint asserts that appellees breached the Agreement by their failure to return the earnest money deposit, and seeks relief in the form of the return of the $300,000 deposit plus interest, attorneys' fees and costs in the total amount of $500,000.

Chaplin's third cause of action is for conversion. Appellant alleges that after being put on notice that it was demanding the return of its deposit, appellees wrongfully refused to return that deposit thus unlawfully converting appellant's property to their own use. Chaplin seeks as relief the return of the deposit plus interest, costs and punitive damages.

Finally, Chaplin's fourth cause of action alleges conduct in violation of the South Carolina Unfair Trade Practices Act (the "SCUTPA"). Chaplin seeks $500,000 actual damages plus treble damages and attorneys' fees in accordance with the SCUTPA.

### C. *The Issue on Appeal.*

Appellees moved before the Bankruptcy Court to strike the demand for a jury trial made by Chaplin in its complaint in the adversary proceeding. In a Decision dated October 20, 1989, Judge Blackshear granted defendants/appellees' motion, *see In re Friedberg,* 106 B.R. 50 (Bkrtcy. S.D.N.Y.1989), and an order striking Chaplin's jury demand was entered by the Bankruptcy Court on November 2, 1989. The Bankruptcy Court determined that:

Chaplin, in the case at bar, is in essence seeking restitution which, if granted, will return the parties to the position they were in prior to the Agreement. Restitution is an equitable remedy....

*Id.* at 55. The Bankruptcy Court held that Chaplin was not entitled to a jury trial because it was in essence seeking rescission and restitution, which are equitable remedies.

After finding that the adversary proceeding "is, in all respects, equitable and therefore the right to a jury trial does not attach," the Bankruptcy Court went on "to make a few final observations." *Id.* In what is arguably dicta but might also be construed as an alternative holding, the court stated that Chaplin had "willingly submitted itself to the jurisdiction of [the Bankruptcy Court]" by requesting that defendants obtain permission for the sale of the Realty from that court. *Id.* at 56. The court opined that, having done so, Chaplin had submitted itself to the equity jurisdiction of the Bankruptcy Court and that it was therefore not entitled to a jury trial on its claims.

Chaplin timely appealed, arguing that its jury demand was improperly stricken.

### DISCUSSION

The parties agree that the issue before the Court is one of federal law, to be reviewed under a *de novo* standard.

Appellant argues that it is entitled to a jury trial under the Seventh Amendment because it seeks money damages for fraud, breach of contract, conversion, and unfair trade practices.

The Seventh Amendment provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.

U.S. Const.Amend. VII. It is well-established that the phrase "suits at common law" refers to " 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable remedies [are] administered.' " *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (quoting *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830)) (emphasis in original).

Thus, regardless of whether the action actually existed in England in 1791, a jury trial is required where "the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty." *Pernell v. Southall Realty,* 416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974); *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 135 (2d Cir. May 14, 1991).

■ In determining whether an action is "legal" or "equitable" for Seventh Amendment purposes, a court must consider "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). In addition, "[t]he Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." *Id.* at 538, 90 S.Ct. at 738 (citing *Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963)).

In the recent case of *Granfinanciera, S.A. v. Nordberg, supra,* 492 U.S. 33, 109 S.Ct. 2782, the Supreme Court made clear that the traditional Seventh Amendment analysis applies to jury trial questions that arise in the context of bankruptcy proceedings. In that case, which concerned a statutory cause of action by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer, the Court stated:

> The form of our analysis is familiar. "First, we compare the statutory action to 18th–century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." ... The second stage of this analysis is more important than the first.

*Id.* (quoting *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987)). If these inquiries lead to a conclusion that a jury trial is available, a court must then examine "whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Id.* This third inquiry is equivalent to the third prong of the standard enunciated in *Ross v. Bernhard* relating to the "practical abilities and limitations of juries." *Id.* at 42 n. 4, 109 S.Ct. at 2790 n. 4.[4]

### A. *The Non–Statutory Claims.*

Appellees argue, and the Bankruptcy Court found, that "[i]n essence what [ ] Chaplin is seeking is a recission [sic] of the Agreement. He is not seeking to sue on the Agreement but rather nullify it altogether." *In re Friedberg, supra,* 106 B.R. at 54. In his decision granting appellant leave to appeal, Judge Sprizzo "agree[d] with the bankruptcy court's finding that plaintiff is in essence seeking recission [sic] of the agreement and restitution," although the court was not convinced that this determination settled the issue of entitlement to a jury. Exhibit D to Brief of Defendants/Appellees. Appellees argue that all four of appellant's causes of action in essence seek rescission and restitution, and thus the action is equitable and the Order of the Bankruptcy Court should be affirmed.

■ It is true, as appellees assert, that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962). Accordingly, equitable monetary relief, such as the return of an unreasonable portion of a fee exacted by a fiduciary, cannot be transformed into legal relief simply by the use of the word "damages" in the complaint. *See Kalish v. Franklin Advisers, Inc.,* 928 F.2d 590, 592, (2d Cir.1991). On the other hand, where a plaintiff has a choice of legal or equitable claims, and chooses to frame

---

**4.** Appellant asserts that this third inquiry is not implicated in the instant action because there is no dispute that solely private rights are at issue.

At oral argument, appellees' counsel agreed with this proposition.

his complaint to assert a properly cognizable legal claim, it seems to this Court improper to deprive that plaintiff of the right to a jury trial by deciding that plaintiff "really" wants an equitable remedy. If Chaplin may properly assert a purely legal claim to address the conduct at issue in this case, and if that is what Chaplin has in fact done, the Court sees no reason to insist that appellant pursue an alternative equitable claim. The Court does not believe such to be the meaning of the language in the cases cited. However, it remains to be determined whether a legal cause of action is available to appellant under the governing substantive law.

█ Accordingly, it is necessary to examine the issues to be tried, as well as the nature of the relief sought, in the instant adversary proceeding. The parties agree that South Carolina law controls the substantive issues in this case. While the determination whether a claim is legal or equitable for the purpose of ascertaining whether a party is entitled to a jury trial is an issue of federal law, *see Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963), the "substantive dimension of the claim asserted finds its source in state law." *Id.*

Under South Carolina law,

[a]s a general rule, a party induced to enter a contract by fraud has a choice among causes of action and remedies. If the fraud gives rise to a breach of promise or warranty, he may elect to sue in contract or in tort. [citation omitted]. If he sues in contract, he may seek his expectancy damages under the contract or rescission and restitution of the contract price.

*Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, 309 S.E.2d 763, 766, 279 S.C. 468 (S.C.App.1983). On the other hand, if the plaintiff elects to sue in tort, he

may, despite the fraud, elect to affirm the contract, retain the benefits received under it, and bring an action for deceit to recover damages sustained by reason of the fraud. Alternatively, he may elect to rescind the contract and recover the consideration paid plus incidental damages which were foreseeable and were incurred in reliance on the fraudulent misrepresentation.

*Id.* (citing cases).

Such a plaintiff appears, then, to have two separate elections to make, the first whether to sue in contract or in tort, and the second between the two causes of action available in either situation. Appellees argue that it is clear that Chaplin has elected to rescind the contract. However, appellees do not address whether Chaplin has elected to sue in contract for rescission and restitution or rather to sue in tort to rescind the contract and recover the consideration paid plus incidental damages. This may be a distinction without a difference, but the latter choice includes incidental damages and may affect the determination whether the cause of action is legal or equitable. *See* discussion *infra*. In the Court's view, it is apparent from the damages alleged that Chaplin is suing in tort for rescission plus incidental damages.

Appellant argues that its fraud action is legal, in that it seeks only damages and not rescission. This argument is, at least in part, incorrect. Appellant insists that it seeks actual and punitive damages for injuries resulting from appellees' fraud. Under South Carolina law, a plaintiff may not seek actual and punitive damages for fraud unless it elects to affirm the contract. *See First Equity Investment Corp. v. United Service Corp. of Anderson*, 386 S.E.2d 245, 249, 299 S.C. 491 (S.C.1989) (damages for breach of contract accompanied by a fraudulent act not allowed absent affirmance of contract); *Turner v. Carey*, 87 S.E.2d 871, 227 S.C. 298 (1955) (damages for fraud and deceit not allowed absent affirmance of contract). It appears certain that Chaplin has elected not to affirm the Agreement in this case. Were it to affirm, it would not be entitled to a return of its deposit, nor would it be entitled to incidental damages and costs.

Appellant further argues that its second cause of action, alleging breach of contract, is a legal claim. Under South Carolina law as noted above, a plaintiff may elect to sue in contract for damages for breach occa-

sioned by a defendant's fraud. However, in the instant case the contract between the parties provides that, in the case of default by THG which results in failure to close the transaction, the purchaser is entitled either to a return of its deposit in which case THG is relieved of liability under the contract, "or the Purchaser shall have the right to sue for specific performance but not for damages." Record on Appeal, D–1. Accordingly, Chaplin's "breach of contract" action is wholly equitable. In effect, it seeks specific performance of that clause of the contract which requires return of the deposit in the case of default. In any event, the contract itself specifically precludes a damages action for breach.

■ Having narrowed appellant's available substantive claim under South Carolina law to that of a suit in tort for rescission and foreseeable incidental damages, it remains to be determined whether the issue is legal or equitable. As has been noted, claims grounded in fraud are not distinctively legal or equitable, and thus "the jury right turns on the remedy sought and the context in which the claim of fraud arises." C. Wright and A. Miller, Federal Practice and Procedure § 2311 (1971) (cited in lower court decision). Although appellant is correct that claims seeking actual and punitive damages flowing from fraud are legal, as discussed above such a claim is not available to Chaplin under South

Carolina law absent affirmance of the Agreement. Rather, the fraud claim which must be examined is one seeking rescission of the Agreement plus foreseeable incidental damages.

■ All parties appear to be in accord that rescission is a classical equitable remedy. Return of the deposit would appear, under federal case law, to be restitutionary and therefore equitable.[5] On the other hand, the incidental damages aspect of the remedy sought would appear to be legal in nature. However, the equitable aspects of the claim clearly predominate, and thus in the Court's view this issue is equitable and does not entitle appellant to a jury.

### B. *The Statutory Claim.*

In its fourth cause of action, appellant alleges a violation of the SCUTPA. In order to determine whether this statutory claim carries a right to a jury trial, the Court must apply the test set out in *Granfinanciera*. The Bankruptcy Court, as well as appellees, appear to assume that this statutory claim may be disregarded once it is determined that "in essence" Chaplin seeks rescission and restitution. The Court does not agree. Appellant seeks actual and treble damages on this claim, and appellees' motion for summary judgment was previously denied. Accordingly, the Court must assume that appellant has

---

**5.** This is not an entirely settled issue. Appellant relies heavily on language in *Granfinanciera* suggesting that where a sum certain of money is sought the legal remedy is adequate and therefore no equity jurisdiction is present. However, following *Granfinanciera* the Supreme Court and the Second Circuit have reaffirmed that restitution is in general an equitable remedy. *See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) ("we have characterized damages as equitable where they are restitutionary ..."); *Kalish v. Franklin Advisers, Inc., supra*, at 592 ("This restitutionary relief is clearly equitable in nature regardless of whether it is called damages"). Many federal cases regard as settled the proposition that restitution is always an equitable remedy, even where it is for a sum certain of money wrongfully held by a defendant. In light of the weight of authority holding that restitution is an equitable remedy, the Court rejects appellant's assertion to the contrary.

The Court notes, however, that the recent Second Circuit case of *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir.), *cert. granted on other grounds*, —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), *and vacated*, —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), somewhat complicates this inquiry. In that case, the court held that, in the case of a suit for rescission of an insurance policy for fraud *where the insurer's liability under the policy has matured*, a jury trial is required. The court relied on Professor Moore, who carves this situation out as an exception to the general rule that rescission is an equitable remedy. It is not entirely clear what the basis for the exception is, and therefore it is difficult to apply the principle to other cases. The Court notes that this decision was subsequently vacated for lack of appellate jurisdiction, however in any event it would not alter the analysis on this appeal inasmuch as there is no argument that appellees' liability has matured under the Agreement.

raised factual issues on its statutory unfair trade practices claim.[6]

In its submissions, appellant states that "courts have recognized that a defendant is entitled to a jury trial in action to recover money damages in statutory action for unfair trade practices." Brief of Plaintiff/Appellant, filed November 19, 1990, at 18. The single case cited by appellant in support of this assertion does not stand for this broad proposition. In *Germain v. Connecticut National Bank*, 103 B.R. 388 (Bkrtcy.D.Conn.1989), *aff'd*, 112 B.R. 57 (D.Conn.1990), cited by appellant, the court held that the plaintiff's complaint, "bottomed on allegations of tort and contract violation, seeks money damages and presents a legal claim triable before a jury." *Id.*, 112 B.R. at 59. The defendant in that case did not argue that the claims were not legal, but rather argued that as they were "core" they should not be tried to a jury. Although the plaintiff in that case did assert a claim of violation of the Connecticut Unfair Trade Practices Act, the statutory claim was nowhere discussed in the decisions. Thus, in *Germain*, unlike this case, it was clear that the common law claims were legal in nature.

The Court's own research has uncovered a single federal case which has directly addressed the question at issue. In *Puretest Ice Cream, Inc. v. Kraft, Inc.*, 614 F.Supp. 994 (D.Mass.1985), the court examined whether a party was entitled to a jury trial on a claim under the Massachusetts Consumer Protection Act for "unfair and deceptive trade practices." *Id.* The court noted that claims under the statute of "deceptive" conduct amounting to intentional or reckless misrepresentation resembled the common law action of deceit, traditionally triable to a jury. However, according to the court, causes founded on misrepresentation were also cognizable in equity, and thus "[t]he important difference between cases founded on misrepresentation lodged in the common law courts rather than the equity courts was the nature of the remedy sought." *Id.* at 997 (citing Prosser, Law of Torts § 105 (3d Ed.1971); 3 W. Blackstone, Commentaries *438). Inasmuch as the plaintiff sought an injunction as well as actual and punitive damages, the court determined that the claim was equitable. However, the court stated that the request for actual and punitive damages alone "would strongly support finding a right to a jury trial." *Id.*[7]

In addition, the Supreme Court has stated that relief consisting of actual and punitive damages "is the traditional form of relief offered in the courts of law." *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).

---

**6.** The SCUTPA requires a showing of public damage, rather than merely a private wrong. Thus, South Carolina courts have held that simple actions for breach of contract, absent evidence of harm to the public, fail to state a claim under the Act. However, the issue whether appellant has alleged and raised facts regarding public harm has apparently been resolved in the affirmative by the Bankruptcy Court.

**7.** At oral argument, the Court suggested that, as neither party had adequately briefed this issue, the parties should submit supplemental letter briefs addressing the question of the availability under the seventh amendment of a jury trial on a state statutory unfair trade practices claim. Unfortunately, the submissions received from the parties were singularly unhelpful. Appellant merely argued that, under South Carolina law, parties are entitled to a jury on claims under the SCUTPA. However, as noted by appellees, it is settled law that the issue whether a state law claim is legal or equitable is one of federal law and is not governed by the decisions of the state courts. *See Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963).

On the other hand, appellees cited to the Court various First Circuit cases in each of which the court, in a footnote, stated that under the Massachusetts consumer protection statute at issue, there is no right to a trial by jury. *See, e.g., Refuse & Environmental Systems, Inc. v. Industrial Services of America, Inc.*, 932 F.2d 37, 42 n. 2 (1st Cir.1991); *Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1052 n. 1 (1st Cir.1985). Those cases simply cited to the Massachusetts Supreme Judicial Court case which so held under state law. *See Nei v. Burley*, 388 Mass. 307, 446 N.E.2d 674, 677–79 (1983). The cases did not address the issue under the seventh amendment, and thus the Court does not consider those cases to have undermined the reasoning of *Puretest*, which the Court finds persuasive. Finally, neither party cited authority discussing the state statutes of any jurisdiction other than South Carolina and Massachusetts.

In the instant case, appellant does not seek any equitable relief on its statutory unfair trade practices claim. Rather, it seeks actual and treble damages, as permitted by the statute. Thus, the Court holds that appellant is entitled to a jury on this claim, which jury would decide any factual issues common to the other claims.[8]

### C. *Other Issues.*

Appellees also argue on appeal that the decision of the Bankruptcy Court should be affirmed for two alternative reasons, neither of which merits much discussion. First, appellees argue that appellant's claims are inherently equitable because they require the interpretation and application of the Bankruptcy Court's own order— specifically, the order authorizing the sale of the Realty. This argument must be rejected. Although appellant premises its "default" claim on the lack of finality of the bankruptcy order on the closing date, whether such constituted a default under the Agreement has nothing whatsoever to do with interpretation of the order itself. In addition, the claims of fraud and unfair trade practices in no way implicate the order.

Finally, appellees rely on the "alternate" holding of the Bankruptcy Court that appellant had submitted to the equitable jurisdiction of that court by requesting that THG seek authorization for the sale. This Court disagrees with the analysis of the Bankruptcy Court on this issue. In *Granfinanciera*, the Supreme Court held that a party could be held to have submitted to the equitable jurisdiction of the bankruptcy court by filing a proof of claim, and thus waive its Seventh Amendment right to a jury trial. Judge Blackshear reasoned that a party could also submit to the jurisdiction of the Bankruptcy Court by requesting approval of a proposed transaction. The Court does not believe that the letter of Chaplin's counsel quoted above would suffice to find that Chaplin had waived its jury trial right and submitted to the jurisdiction of the Bankruptcy Court.

### CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court striking Chaplin's demand for a jury trial is reversed. The Court holds that a jury trial is required under the seventh amendment for Chaplin's claim under the SCUTPA, and that any factual issues common to this claim and appellant's non-statutory claims must be resolved by the jury. Accordingly, the matter is remanded to the Bankruptcy Court for further proceedings not inconsistent with this decision.

It is so ordered.

---

8. It is an established principal that "where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'" *Dairy Queen v. Wood, supra,* 369 U.S. at 472–73, 82 S.Ct. at 896–97. Accordingly, the common factual issues must be tried first to the jury.